(No. 30500.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK C. GIERENS *et al.,* Plaintiffs in Error.

*Opinion filed May 20, 1948—Rehearing denied September 15, 1948.*

RALPH M. EATON, and CHARLES F. KINNEY, both of Mt. Carroll, LOUIS R. GENTILI, of Chicago, and ROBERT L. BRACKEN, of Dixon, for plaintiffs in error.

GEORGE F. BARRETT, Attorney General, of Springfield, (J. L. BREARTON, State's Attorney, of Savanna, of counsel,) for the People.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of the court:

Plaintiffs in error, Frank C. Gierens and Nicholas J. Ferencak, were convicted in the circuit court of Carroll

County for the larceny of $29.45. Each was sentenced to the penitentiary for a term of not less than two nor more than four years. They sued a writ of error out of this court to review the record of their convictions. Errors relied upon for reversal are that the court improperly over-ruled plaintiffs in error's challenge to the array of a special panel of fifty jurors; that court action material to plaintiffs in error's case was taken in their absence; that the jurors named in the special panel were not summoned to appear for service in the manner required by law; that a pistol and bullets were erroneously admitted in evidence; that there was error in the giving of instructions and that the State's Attorney made prejudicial remarks in his argument to the jury.

The grand jury that returned the indictment had been organized to serve as the grand jury during the June term, 1947. It was reconvened by order of court on July 14, and on the same day the indictment was returned. A regular panel of petit jurors was summoned to appear June 23. The record does not disclose whether such panel appeared at that time or, if they did, the length of service rendered. On September 22, an order was entered, entitled in this cause, which stated in substance that this criminal action involved a felony, that it was for trial and that the trial judge was convinced that a jury could not be obtained from the regular panel to try said cause. The order directed the clerk to draw in the same manner as the regular panel, a special panel of fifty jurors, and ordered that they be summoned to appear at the trial of said cause to commence October 1, 1947, or any subsequent day the case should be called for trial. Later the court changed the date of hearing, resetting it for October 13, and on that day the fifty jurors named in the special panel appeared. None of the jurors drawn in the regular panel was present. The record is silent as to what became of the regular panel. No information is furnished as to

whether it had completed its service and been excused or merely directed not to appear on October 13. Plaintiffs in error were arraigned on October 10, at which time each was furnished with a list of the names of jurors of the regular panel as well as the fifty summoned as a special panel.

Plaintiffs in error contend that they were required to go to trial and select a jury from the special panel when they had the right to insist upon making their first selections from the regular panel. It is argued that the procedure followed violated section 8 of the Jurors Act, (Ill. Rev. Stat. 1947, chap. 78, par. 8,) and that as a result they have been deprived of a constitutional right to have their guilt or innocence determined by a jury drawn according to the law of the State. There is no claim that the special panel was not drawn in a proper manner or from a proper list. There is no showing that plaintiffs in error's rights were prejudiced by the failure to have the regular panel of jurors present to be examined on their *voir dire* before resorting to those named in the special panel.

The order of September 22 directing the drawing and selecting of fifty jurors as a special panel followed the language of the proviso of section 8 of the Jurors Act authorizing special panels in criminal cases involving felonies. The question is as to whether the statute requires that a regular panel be present as the primary list to be called as prospective jurors before resorting to the jurors named in the special panel. In *Henry* v. *People,* 198 Ill. 162, a motion to quash a special panel was entered and a question was raised as to whether the court was regularly constituted in contemplation of law for the trial of criminal cases after the regular panel had been quashed on defendant's motion. It was said a strict interpretation of section 8 did not require the regular panel to be in attendance while a jury was being selected from a special panel, which special panel had been drawn in accordance

with the provisions of the statute. Furthermore, it was held in that case that if the procedure followed in selecting the jury should be deemed to be an irregularity, it would not require a reversal, as no prejudice was shown to have resulted from such irregularity. Also, see *People* v. *Estes,* 303 Ill. 602.

Plaintiffs in error rely upon *People* v. *Lembke,* 320 Ill. 553, which involved questions pertaining to the lists of jurors authorized under section 1 of the Jurors Act. It was held that the irregularity in preparation of the list did not require a showing that the defendant had been prejudiced by such procedure, that when there was a violation of the provisions of sections 1 and 2 of the statute such violation was substantial and amounted to a denial of a trial by jury according to the law of the land, and was such as to require reversal of the judgment. That case is distinguishable from the facts in this case, and the holding in the *Henry* and *Estes cases.* In the latter cases, no question was raised as to the drawing of the jury, and sections 1 and 2 were not involved.

One of the grounds assigned in support of plaintiffs in error's challenge to the special panel was that none of the jurors named in such panel had been summoned in the manner provided by law. During the hearing it was stipulated that none of the jurors named in the special panel was summoned personally by the sheriff of the county by reading the venire issued or delivering a copy thereof to the juror at his or her usual place of abode. It was further stipulated that each member of the special panel was sent by mail a copy of the venire showing the time and place he was to appear and that each prospective juror receiving such copy mailed back to the sheriff a postal card acknowledging receipt of the copy of the summons and a statement as to the mileage from the juror's home to the county seat.

Section 11 of the Jurors Act directs that the sheriff of

the county shall summon the jurors "by reading the same or delivering a copy thereof to, or at the usual place of abode of, each of the persons directed to be summoned" as jurors. Section 9 of the Jurors Act directs that grand jurors shall be summoned in the manner provided in section 11 for serving petit jurors. In *People* v. *Wallace,* 303 Ill. 504, the grand jurors had been notified by mail and not by service of summons. It was held that since there was no showing that the defendant had been prejudiced by such method of notifying jurors, the claim was without merit.

We do not approve the method of summoning jurors as being in accord with the requirements of the statute, but since all the jurors appeared at the trial and, in the absence of a showing of prejudice, there is nothing in such service about which plaintiffs in error can complain. (*Walker* v. *State,* 104 Tex. Crim. 207, 283 S.W. 787.) The challenge to the special panel was properly overruled.

When the order of September 22 directing the summoning of a special panel of fifty jurors was entered, another order was entered sustaining plaintiffs in error's motion to quash counts 4 and 5, and overruling it as to counts 1, 2 and 3. An order fixing date of hearing on plaintiffs in error's motion to impound certain evidence was also entered. The record made at such time shows the presence of plaintiffs in error in court and that they were represented by counsel, but later the same day another order was entered in which reference was made to the previous order and stating that plaintiffs in error were not in court when the decisions were made in such prior orders. The order further recited that defendants were now present in court and that the orders previously entered had been explained by the court to each defendant, and after making such explanation the court directed that the orders theretofore entered in the absence of plaintiffs in error be re-entered, and the substance of the previous orders were

re-entered. Plaintiffs in error's contention that they were prejudiced by not being present at the time the second series of orders was entered is without merit.

Facts pertinent to the inquiry on the admissibility of the pistol and bullets are as follows: About noon June 18, 1947, four men entered Indian Head tavern, located three miles north of Savannah, and ordered the owner of the tavern and his customers to stand aside. They seized four slot machines, located in a room separate from the tavern, and carried them out of the building. The four fled from the tavern in two automobiles, a Chrysler and a De Soto. Information that a crime had been committed at the tavern was given to State police headquarters at Sterling immediately after it occurred. Two State police officers traveling in a State car equipped with radio service were cruising in the vicinity of Stockton when they received the message. They were traveling in a westerly direction. Shortly afterwards, they met the Chrysler and De Soto cars which had been described over the radio. The police officers pursued and soon all three automobiles were traveling at an excessive rate of speed, at times in excess of ninety miles per hour. After a chase of several miles, the De Soto automobile was stopped, and plaintiffs in error, who were in the car, were placed under arrest. Two of the slot machines taken from the tavern were in the trunk of the car and the money which was the subject of the larceny charge was found in the two slot machines. The machines and money were identified as the property of the owner of the Indian Head tavern. Witnesses who were in the tavern when the slot machines were taken testified that one of the four had a gun but did not describe it with more definiteness. It was stated that they used it in a threatening manner in giving directions to the owner and patrons. Before the police officers overtook the De Soto and arrested plaintiffs in error, and while the race was at its height, they saw something, which they did not identify,

leave the De Soto automobile and light beside the road. The officers testified that when the article was thrown from the car they made a mental identification of the place where it occurred. After the arrest they returned to the place so marked and found the pistol, and it was introduced in evidence on the theory that it was the object thrown from the car. The bullets admitted in evidence were extracted from the pistol.

The evidence does not show the time that elapsed between the departure of the four men from the tavern and the arrest of plaintiffs in error, some forty-five miles away. It does appear that the officers met plaintiffs in error a short distance west of Stockton, which would be approximately thirty miles from the tavern. It also appears that from the time the officers met the Chrysler and De Soto cars, they were in sight of the officers all the time up to the arrest of plaintiffs in error, and that the distance from the point west of Stockton where they met, to the point where the arrest occurred near Warren, was traveled at a high rate of speed and in a short period of time.

Plaintiffs in error contend that they were not charged with a criminal offense, an essential element of which involved the use of a gun or weapon, that therefore the pistol and bullets should not have been admitted in evidence. Plaintiffs in error were identified as being two of the four participating in the theft in the tavern. Defendants offered no evidence. The flight and the throwing of the gun from the car were circumstances so connected with the commission of the crime as to make the pistol and bullets admissible in evidence.

Plaintiffs in error's guilt was proved beyond a reasonable doubt and since the jury had nothing to do with fixing the penalty on the grand larceny charge, the admission of the gun and bullets could not have prejudiced plaintiffs in error's rights to a fair trial.

During the argument to the jury, the State's Attorney

stated that if plaintiffs in error had not thrown something from the car, the police would not have suspected they had a gun, that by such act "they furnished the evidence. They had a gun and no one has denied it." It is contended that such statement indirectly called the attention of the jury to the fact that defendants had not testified in the case. The circumstances connected with the statement show that plaintiffs in error could not have been prejudiced by this statement. The criticism directed at an instruction given on behalf of the People is without merit.

For the reasons assigned, the judgment is affirmed.

*Judgment affirmed.*