(No. 31493.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GLEN ANDERSON, Plaintiff in Error.

*Opinion filed September 21, 1950.*

Ralph M. Eaton, of Mt. Carroll, for plaintiff in error.

Ivan A. Elliott, Attorney General, of Springfield, and Lawrence A. Smith, State's Attorney, of Savanna, (Harry L. Pate, of Tuscola, of counsel,) for the People.

Mr. Justice Thompson delivered the opinion of the court:

Plaintiff in error, Glen Anderson, hereinafter called the defendant, was indicted and tried in the circuit court of Carroll County, for the crimes of incest and rape upon his daughter, twelve years of age. He entered a plea of not guilty, was tried before a jury and, at the close of all the evidence, was found guilty as charged in the indictment. Motions to set aside the verdict and for new trial were overruled, and defendant was sentenced to the penitentiary for a term of not less than ten nor more than twenty years under each of counts 1 and 2 for incest, said terms to run concurrently, and for the further term of twenty-one years under count 3 of the indictment for rape, said term to run consecutively to the terms imposed under counts 1 and 2, and to begin at the expiration and completion of the terms under counts 1 and 2 of the indictment.

Numerous errors are assigned, but they group themselves in about five questions: (1) Whether defendant was proved guilty beyond a reasonable doubt; (2) striking the motion of the defendant challenging the array and to quash the venire; (3) ruling of the court on evidence; (4) fail-

ure to submit proper form of verdict; and (5) improper conduct of the State's Attorney in the presence of the jury and prejudicial remarks in his argument.

The facts and circumstances as shown by the evidence in this case are unfit for print and only the necessary details will be related here. The record discloses that the offense upon which the indictment is predicated occurred in the family home in Savannah, on the evening of April 15, 1948, at a time when the prosecuting witness and her three sisters, with the defendant, were alone in the home. Evidence was also offered of occurrences a few evenings prior to this date.

It is urged by the defendant that his motion challenging the array should have been sustained for the reason the People failed to comply with the legal method for summoning jurors; that in mailing out postcards there was no compliance with the statute as to personal service of summons upon the individuals named in the venire, and the case of *People* v. *Gierens*, 400 Ill. 347, is cited, wherein we expressed disapproval of the method of summoning jurors as not being in accord with the statute. We there stated that since all the jurors appeared at the trial and, as there was no showing of prejudice, there was nothing in such service about which plaintiffs in error could complain. We find no prejudice in this respect in this case. We have held that where grand jurors were not personally served with summons, but were summoned by mail, a challenge to the array was properly overruled where no prejudice to the defendant was shown. (*People* v. *Sink*, 374 Ill. 480; *People* v. *Kramer*, 352 Ill. 304; *People* v. *Birger*, 329 Ill. 352; *People* v. *Wallace*, 303 Ill. 504.) The court did not err in the instant case in overruling the motion.

It is contended by the defendant that at the close of the case for the State there occurred a demonstration in the courtroom which could hardly have been more effective

to arouse and inflame the passion and prejudice of the jury against the defendant if it had been premeditated by the principal participants, namely, the prosecuting witness, the sheriff and the State's Attorney. It is urged that as the prosecuting witness left the stand crying she stated, "I saw her, she's not going to shake her fist at me." And that the sheriff remarked, "I seen that." This part of the record discloses that the court then said, "The jury will disregard any demonstration and Joan will be removed from the courtroom in the sheriff's custody." At this particular time the State's Attorney stated, "I want the record to show that the demonstration came from the party, Dorothy Anderson, who is the sister of the defendant, Glen Anderson." Defendant's counsel objected to this but there does not seem to be any ruling and the State's Attorney then stated further, "That she shook her fist at Joan just as she now leaves the witness stand." The court then ordered the cause to proceed. Under the insistence of counsel for the defendant, the jury was excused. The State's Attorney then made some comments for the record and, although counsel for the defendant had not made any further statement, the court volunteered the remark, "The court has charge of this trial, Mr. Eaton." It is presumed the court had charge of the trial and it was unnecessary to make this statement.

After the jury was excused the following motion was made by the attorney for the defendant, "I would like at this time for the sake of the record to make a motion to withdraw the jurors and to declare a mistrial for three reasons: One, that in the presence of the jury the complaining witness made a demonstration of tears and stated that some person had shaken her fist at her after she had just testified. For the second reason, that in the presence of the jury the State's Attorney of Carroll County, Illinois, made a statement for the record with reference to whether or not such a demonstration was made by such person as

against the complaining witness and that in addition thereto and in the presence of the jury the sheriff of Carroll County stated to the court that he had seen that demonstration." The motion was immediately denied by the court. While this in itself would not justify the sustaining of the motion to withdraw a juror, it does emphasize the tenseness and feeling that existed in the courtroom which necessitated close observance and care in order that the defendant might have a fair and impartial trial. Regardless of who might have been responsible in bringing about this emotional outburst on the part of the witness, it certainly would not react in the defendant's favor and there was not the slightest indication that he had anything to do with bringing about this demonstration. Under such circumstances the jury might have sympathized with the prosecuting witness, thus causing a feeling of antagonism toward the defendant.

The defendant contends the trial court erred in excluding the testimony of Neoma Anderson as to matters which occurred in the presence of the prosecuting witness, Joan Anderson, when she was questioned in the office of the State's Attorney. It is pointed out that after the State's Attorney had summoned the daughter from school with reference to the alleged charges, she was questioned alone in the private office of the State's Attorney and, when he had finished his interview, he came out of his private office and said to the wife of the defendant, "That is all for my office, and don't come back," and gave defendant's wife and the prosecuting witness a shove out of the door. We are of the opinion the prosecuting witness could have been properly interrogated as to this and, if denied, testimony would have been admissible for impeachment purposes. This was not done, and under the state of the record here the testimony of Neoma Anderson was properly excluded.

The serious question presented seems to be as to the next contention where it is urged the trial court improperly refused to grant a one-day continuance to the defendant

in order to attempt to procure the testimony of a sick witness on a vital point. As a part of the defense the defendant offered to produce a witness, one Kirkman, who it is alleged would testify that the prosecuting witness had stated to him some time prior to the trial, when asked why she was saying these things about her father, replied, "Because my mother was making me do it." A subpoena was served on this witness by the sheriff of Carroll County, but the witness was sick. Defense counsel was given only a short time to contact the witness on a request for a twenty-four hour continuance. Under the circumstances surrounding this prosecution, such testimony, if shown, was of vital importance to the defense.

It is urged by the People that this point was not raised by the defendant in his motion for new trial, nor in his motion in arrest of judgment, nor in his statement of errors relied upon for reversal, and that the point is raised for the first time in this court. For that reason, it is contended his position is untenable and is not to be considered on a review by this court. The following cases are cited in support of this position: *Minnis* v. *Friend*, 360 Ill. 328; *People* v. *Vickers*, 326 Ill. 290; and *Erikson* v. *Ward*, 266 Ill. 259. There can be no question about this being the rule, and, in addition, the proper foundation was not laid to impeach the prosecuting witness on this point. *People* v. *Niksic*, 385 Ill. 479.

It is next urged the court committed reversible error in permitting, over objection, the medical witness to testify that in his opinion the prosecuting witness was not a virgin. Doctor Lemuel B. Hussey, the only physician who examined the prosecuting witness, did so some twenty-one days after the alleged offense was committed. He testified that he had occasion to make an examination of the female organs of the prosecuting witness and found that the hymen was not intact, that it was stretched but was not completely

ruptured and that the insertion of any instrument could cause the rupture of the hymen in a female; that it could be ruptured by other means other than by insertion into the vagina, such as riding a bicycle; that it would be possible through some sort of violent physical exercise, by a fall on some sharp object, by scuffling or kicking of a child. The serious objection to his testimony stems from the following: Q. "Would you say from your examination of Joan Anderson at that time that she was a virgin?" Mr. Eaton: "Objected to, calling clearly for a conclusion." Mr. Smith: "It is qualified and proper." By the court: "He may answer from a medical standpoint." A: "In my opinion she was not a virgin."

The defendant cites the case of *People* v. *Schultz*, 260 Ill. 35. In that case the physician who had examined the prosecuting witness shortly after an alleged rape upon her stated the conditions found with reference to inflammation, lacerations and the like and gave his opinion, "I think it was a case of rape." Quoting from *Noonan* v. *State*, 55 Wis. 258, it was there said, "The witness was competent to state what effects might result from a rape, but it was going far beyond the range of authorized expert testimony to allow him to give an opinion that the condition he discovered was produced by rape. * * * The testimony admitted was a usurpation of the province of the jury, and beyond all question its admission was error." After there citing other cases, we held, "The testimony of Dr. Loewinger in this case trenched upon the jury's province and he gave an opinion on matters which they were competent, and which it was their duty, to decide."

It is unnecessary to extend this opinion by discussion of the various cases which might be applied by analogy when the effect of the answer here is so apparent that it does, under the state of the record here, usurp the province of the jury. It will be observed here the doctor gave testi-

mony that the condition he found could have been caused in several different ways. This left the question clearly for the jury as to the evaluation of his testimony on the ultimate question to be determined. To then state that in his opinion the prosecuting witness was not a virgin could only have the effect of conveying to the jury that in his, the doctor's opinion, the prosecuting witness had had sexual intercourse, which was pertinent to the ultimate issue. According to Webster's New Unabridged International Dictionary, Medical dictionaries and foremost lexicographers, a virgin is one who has had no sexual contact. To permit this doctor's answer to stand would convey to the jury that the condition found was caused by sexual contact and would be analogous to those cases where the testimony was "that the condition was produced by rape." Here, his opinion was to the effect that the condition he found was caused by sexual contact. An expert must not usurp the province of the jury by drawing conclusions of fact upon which the decision of the case depends. In this particular case the testimony of the physician that the prosecuting witness was not a virgin might have been a controlling circumstance from which the guilt of the accused was inferred. This, in our opinion, constituted error.

This situation was further aggravated by the State's Attorney in his argument referring to the testimony that the girl was not a virgin. Much is said about the conduct of the State's Attorney otherwise, including his violation of the rule that a State's Attorney arguing to the jury must not state his own opinion of the guilt of the defendant.

The very nature of cases of this kind demands the exercise of extreme care in preventing improper evidence and prejudicial argument which might deprive a defendant of that fair and impartial trial to which everyone, both guilty and innocent, is entitled. Under the state of the record here we are constrained to grant a new trial, for the reason

we are of the opinion the defendant has not had that fair and impartial trial to which he is entitled.

Other questions have been argued in the briefs, but, as they are likely to be obviated on a new trial, we shall not extend this opinion by discussing them. We are expressing no opinion on the sufficiency of the evidence.

For the reasons above pointed out, the judgment of the circuit court of Carroll County is reversed, and the cause remanded to that court for a new trial.

*Reversed and remanded.*