THE STATE OF OHIO, APPELLEE, *v.* CIESIELSKI, APPELLANT.

[Cite as State v. Ciesielski, 18 Ohio App. 2d 85.]

(No. 842—Decided June 3, 1964.)

*Mr. G. William Brokaw,* prosecuting atorney, for appellee.

*Mr. Avetis G. Darvanan,* for appellant.

FRANCE, J. Defendant was tried, convicted and sentenced in the Court of Common Pleas on two counts, the first for burglary and the second for larceny of narcotics,

both arising out of entry into a drug store during the night of June 19, 1960.

Defendant was apprehended on the same night by police, following a high speed chase by cruiser from the vicinity of the scene of the crime. His car was wrecked during the chase, and an alleged confederate escaped.

He was charged in Municipal Court, bound over to the grand jury, and released on bail as set by the Common Pleas Court pending grand jury indictment. While free on bond he went into Pennsylvania and there committed crimes for which he was sentenced by federal authorities to confinement in federal prison in Pennsylvania, and, thereafter, he was taken by the Commonwealth of Pennsylvania to Pittsburgh for trial and conviction on a state charge. Meanwhile Columbiana County authorities filed detainers against him with the federal warden.

Commencing September 28, 1960, through February 17, 1962, defendant wrote letters to the Prosecuting Attorney of Columbiana County asking that the charges against him be disposed of while he was in federal confinement. When no action was taken, on September 1, 1961, he filed a motion to show cause why a writ of habeas corpus *ad prosequendum* should not issue to bring him to trial in Ohio while a federal prisoner in Pennsylvania. The prosecuting attorney resisted such attempts by defendant to initiate his removal to Ohio for trial, and the motion was overruled.

Thereafter, defendant, on May 15, 1962, moved to quash and dismiss the indictment for the reason that he had been denied speedy trial. This motion was overruled by the trial judge.

Upon termination of his federal and Commonwealth of Pennsylvania sentences, defendant came to Ohio where he was, on May 24, 1963, arraigned and, thereafter, on July 30, 1963, placed on trial.

Three errors are assigned. The first relates to claimed denial of defendant's constitutional right to a speedy trial. (Section 10, Article I, Ohio Constitution.) The state defends against this claim first on the ground that defendant

did not make clear enough that he wanted trial. On the record we find this defense utterly without merit. The accused need not, at his peril, use the exact legal phrases required. It is sufficient that he make known his whereabouts, condition and his desire that something be done about the indictment. *State, ex rel, Lotz,* v. *Hover, Pros. atty.,* 174 Ohio St. 68; *State* v. *Milner* (Common Pleas, Montgomery County), 78 Ohio Law Abs. 285; *State* v. *Waites* (Municipal Court of Akron), 82 Ohio Law Abs. 356.

It is also claimed that the defendant, at the time, sought the wrong remedy and that a state court had no jurisdiction in habeas corpus over a federal warden in another state. The trial judge so found in overruling defendant's motion. Whatever the truth of this proposition, it is unavailing as a device to block the defendant's desire in the face of a showing, as in this case, that the federal authorities are willing to overlook such technical objections and to make the defendant available for trial. Whether the machinery for producing the defendant lies by writ of habeas corpus *ad prosequendum (State, ex rel. Short, Atty. Gen.,* v. *White,* 39 Okla. Cr. 242, 264 P. 647) or an application to the executive authority by the state (Section 4085, Title 18, U. S. Code) or a combination of the two need not be decided here. It is probable that the federal authorities would have imposed no barrier by objection to territorial jurisdiction. See *Carbo* v. *United States,* 364 U. S. 611, 5 L. Ed. 2d 329, 81 S. Ct. 338; *United States* v. *Kipp,* 232 2d 147; *Taylor* v. *United States,* 238 F. 2d 259.

The reasons for denying defendant's request, as given by the prosecuting attorney and stated in the court's ruling of September 22, 1961, were insufficient, and the failure of the trial judge either to grant defendant's motion for writ or, alternately, to require the prosecuting attorney to initiate some efficacious request for defendant's presence was error.

But this is not the error complained of! It is claimed that, as a result of failure to grant defendant's motion, the trial court was under obligation to quash the indictment. We do not think this necessarily follows. While defendant

has a right to speedy trial, denial of that right, while he is held by another sovereign, requires reversal of his conviction only if failure to grant it would operate to prejudice him in his defense. Thus, in *Taylor* v. *United States*, 238 F. 2d 259, the court stated, at page 262:

"* * * Nor can it be said that the lack of a speedy trial did not harm appellant, for the possibility of serious prejudice existed here under circumstances disclosing a 'weak' case. Had the evidence been *overwhelming*, so that no infirmity might be made to appear, a different result might be reached. *Berger* v. *United States*, 1935, 295 U. S. 78, 88-89, 55 S. Ct. 629, 79 L. Ed. 1314. The long lapse of time between the commission of the offenses and the trial, the incarceration of appellant throughout the entire interim, and the resulting handicap to the procurement of witnesses who might have supported appellant's alibi, or any other defense, must seriously have handicapped the preparation of a defense. * * *

"* * * It is the combination of the factors set forth above which motivates our decision. We do not wish to be understood to do other than apply the rule stated to the facts and circumstances of this particular case."

We are thus led to a consideration of whether, relative to the prosecution, defendant was, or could logically have been, handicapped in marshalling his defense.

In this connection defendant claims the death of his wife and his alleged confederate as making their testimony in his behalf impossible to produce. But defendant never proffered what the nature of the exculpatory evidence might be. Alibi was improbable; corroborating an innocent involvement of defendant in the confederate's sole crime is almost too far out; it strains the credulity.

But vis-a-vis the defendant, the state's delays in getting to trial were most harmful to its case. One of the officers engaged in the chase died before trial. One of the lieutenants in charge of the East Liverpool Police Department's evidence locker, who had been an eyewitness to the start of the chase, also died; and, apparently, something happened to the alleged narcotics stored in this

locker, which prevented their production and identification at trial. In addition, a helpful bystander, "Joe Ross," who helped the police by gathering the loot tossed out of a speeding car, strangely disappeared without trace, thus creating a hiatus in the proof of chain of custody of this evidence. Seldom, perhaps, has a prosecution been so seriously handicapped by the product of its own delay. Thus if there was prejudice at trial resulting from delay, this prejudice operated much the more strongly against the state than against defendant.

For these reasons we find that defendant's first assignment of error is not well taken.

Defendant's second assignment relates to the admission of a suitcase allegedly thrown from defendant's car during the chase. It apparently lay in the road, after being run over by the pursuing cruiser, while the police were occupied in guarding defendant and unsuccessfully pursuing a second occupant of the pursued vehicle. A Joe Ross was sent by the officers to pick it up and bring it to them. As the surviving arresting officer testified, it contained some tools, a rope, and a "sack of narcotics." Joe Ross disappeared without trace pending trial.

The objection to the admission of the suitcase and contents is based on the fact that it involves the silent hearsay testimony of Joe Ross that this was the same suitcase and contents as he found in the road, neither policeman having witnessed or assisted with its retrieval. We do not believe there is implicit in the testimony concerning the retrieval of the suitcase any such unsworn testimony. *A* suitcase was thrown, *a* suitcase was presented to police by Joe Ross after the police requested that he retrieve it, and all within ten minutes of the time it was thrown. There are, of course, possibilities of substitution or of fabrication or "planting" of items in it, but it must be remembered that all this occurred after 3 a. m. on a sparsely settled stretch of road with only one other person besides police and the accused in the area. The possibilities of tampering or of substitution went to weight and not to admissibility, and there was no error in admittng

the suitcase and its marked and identified contents into evidence for, as the trial judge aptly stated, "what it was worth." See *New Jersey* v. *Pontery,* 19 N. J. 457, 117 2d 473; *People* v. *Gierens,* 400 Ill. 347, 81 N. E. 2d 165; *People* v. *Cullen,* 37 Cal. 2d 614, 234 P. 2d 1; *White* v. *United States,* 200 F. 2d 509.

However, the state went beyond that point and offered testimony by Officer Garvey as to a "sack of narcotics" being in the suitcase, although no such item was offered into evidence, nor was its absence in any way accounted for. Permitting such an unsupported conclusion to be palmed off on the jury as fact was error highly prejudicial to defendant. This was compounded by permitting the manager of the robbed drug store, who was not a licensed pharmacist, to testify that several bottles missing from the drug store after the break-in contained narcotics, because the labels on the bottles said so. It seems almost incredible that the contents of the bottles, said to have been in police custody, were apparently never tested, and even more incredible that they should have disappeared, as apparently they did, from the police evidence locker pending trial. The manager's testimony was both clear hearsay and a conclusion as to an essential fact by one who was unqualified to offer it. Admission of all testimony relative to narcotics was error prejudicial to defendant.

The third assignment of error relates to failure to direct a defendant's verdict for failure of proof. As to the first count in the indictment—burglary—there was abundant proof of corpus delecti, of defendant's identification on the scene and of his flight, even without admission of the contents of the suitcase which contained burglar tools. As to this count the motion for directed verdict was properly overruled.

But the second count charged, not just larceny, but larceny of narcotic drugs. It was thus essential to the state's case that it prove asportation of some item defined in Section 3719.01 (L), Revised Code, as such. There was, as observed before, not a shred of competent evidence on this point. The store manager could not, with certainty,

testify that any narcotics were removed at the time in question. His testimony that he saw them later at the police station (presumably with other contents as part of the "sack of narcotics" recovered in the suitcase) is without value in the absence of his qualification to give an opinion on that subject and in the further absence of testimony accounting for the failure to produce the alleged narcotics at trial.

There being complete failure of proof as to an essential element in the second count, the defendant is entitled, as a matter of law, to acquittal on that count. Finding that he was properly convicted on the first count and that the erroneously admitted evidence did not operate to his prejudice thereon, we remand the cause to the Court of Common Pleas for discharge of the defendant on the second count and for resentence on the first count alone.

*Judgment accordingly.*

BROWN, P. J., and JONES, J., concur.