**Salem**

DAVEY JAMES REEDY

v.

COMMONWEALTH OF VIRGINIA

No. 0479-88-3

Decided February 6, 1990

COUNSEL

Terry N. Grimes (King, Fulghum, Snead & Hale, on brief), for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

MOON, J.—Davey James Reedy was convicted of arson and two counts of murder by arson. As circumstantial evidence that Reedy started the fire, the Commonwealth relied on evidence that Reedy's clothing contained traces of gasoline. Reedy claims that his convictions should be reversed because the Commonwealth failed to establish the chain of custody of certain items of the clothing between the time Reedy left the scene of the fire and the time the clothing arrived at the state laboratory, and thus the trace of gasoline on his clothing could have resulted from mishandling. We disagree and affirm because the evidence was sufficient to show with reasonable certainty that the clothing had not been altered, substituted, or contaminated after the fire so as to affect the results of the analysis.

When the Commonwealth offers testimony concerning the physical or chemical properties of an item in evidence, or of any foreign matter found on the item, authentication requires proof of the chain of custody, including "a showing with reasonable certainty that the item [has] not been altered, substituted, or contaminated prior to analysis, in any way that would affect the results of the analysis." *Washington v. Commonwealth*, 228 Va. 535, 550, 323 S.E.2d 577, 587 (1984), *cert. denied*, 471 U.S. 1111

(1985). "[T]he requirement of reasonable certainty is not met when some vital link in the chain of possession is not accounted for, because then it is as likely as not that the evidence analyzed was not the evidence originally received." *Robinson v. Commonwealth*, 212 Va. 136, 138, 183 S.E.2d 179, 180 (1971) (emphasis omitted).

Shortly after 6:00 a.m. on August 10, 1987, fire broke out at the residence of Reedy, his four year old daughter, and two year old son. The children died of carbon monoxide poisoning due to smoke inhalation, but Reedy escaped with burns, lacerations, and smoke inhalation injury. Deputy Roanoke Fire Marshall David Rickman, who investigated the fire, testified that the fire was intentionally caused by the pouring and igniting of gasoline on the back porch and kitchen area of the house. Laboratory analysis of burnt wood samples from the house revealed the presence of gasoline. Laboratory analysis of the t-shirt and underpants worn by Reedy at the time of the fire revealed the presence of gasoline on one or both pieces of clothing. A physician who treated Reedy testified that, because of the irregularity of burn patterns on Reedy's body, Reedy's burns were not caused by superheated air, but were caused by direct flame.

Reedy, who was separated from his wife, had threatened several times, when he was distraught or had been drinking, to burn his house down with his children and himself in it rather than to allow his wife to obtain the children's custody. The evening before the fire, he had an argument with his girlfriend. As a result of the argument, the girlfriend left Reedy's house with her belongings. Within hours before the fire, Reedy made two trips by taxi to his girlfriend's house in an effort to get her to return to his house. Reedy had been drinking.

After the fire started, Reedy told a neighbor that his children were not in the burning house but were at his girlfriend's house. Therefore, no one attempted to rescue the children. However, before being taken to the hospital, Reedy told a neighbor that the children were in the house. Then, both children were located in the house, dead from carbon monoxide inhalation. The daughter was at the top of the stairs. The son was found in a second floor bedroom with the door tied shut from the outside.

During the fire Mr. and Mrs. Lombardo, Reedy's neighbors, took Reedy two doors away to their house. There, Mrs. Lombardo doused Reedy's hands with water from a garden hose in response to Reedy's request for help to relieve the pain caused by burns to his hands.

An ambulance arrived at approximately 6:30 a.m. Paramedic David Bishop found Reedy sitting on the Lombardos' back porch step with "a towel or something" draped over him. Bishop cut off Reedy's t-shirt and laid it on the porch floor. Bishop noted that water was on the porch. Bishop helped Reedy onto a stretcher, placed the t-shirt on the foot of the stretcher, and carried Reedy to the ambulance. Bishop testified and was cross-examined in detail concerning the possibility that the shirt came in contact with gasoline during transit to the hospital. His testimony negated any likelihood that the shirt was contaminated in transit.

At Roanoke Memorial Hospital, the ambulance was met by Nurse Howard King. King supervised as Reedy was carried on the stretcher through the emergency room to a trauma room. During Reedy's treatment, King cut off Reedy's underpants. Nurse Vickie Trump also attended in Reedy's treatment. When Trump was cleaning up after Reedy was removed from the trauma room, she found his clothes on the floor and put them in a new plastic patient personal belongings bag. Believing that the Fire Department would be interested in the clothes for studying the relationship of clothing to burn patient injury, Trump telephoned the Fire Department. A Fire Department dispatcher informed Trump that Deputy Fire Marshall Rickman would come to the hospital to get the clothes. Trump then transferred the clothes to a new paper bag and wrote Rickman's name on it, after having been told by a colleague that the Fire Department preferred paper bags to plastic bags. Trump then placed the paper bag containing the clothes under a counter at the nurses' station. This spot was both inconspicuous and inaccessible to the public. At approximately 3:00 p.m., when nurse shifts changed, Trump informed her replacement, Nurse Kathleen Brow, of the matter and asked that Brow give the bag to Rickman. Rickman and Lieutenant David Deck of the Roanoke Fire Department picked up the bag from Nurse Brow at approximately 4:00 p.m.

At the Fire Department, Deck transferred the clothing to an evidence container. Deck sealed the can, labeled it, and put it into

an evidence locker. Deck delivered the container to the state forensic laboratory on August 11, 1987.

At the forensic laboratory, trace analyst Amy Lawrence conducted a gas chromatography test on the contents of the container—both the t-shirt and underpants worn by Reedy at the time of the fire. The testing process was as follows: the evidence container was heated, causing certain chemicals inside to vaporize; some of the vapor was drawn out by vacuum and captured in a charcoal filter; solvent was used to wash traces of the chemical from the charcoal; and a two milliliter volume of the solvent, with chemical, was analyzed by the gas chromatography machine. The test showed the presence of gasoline. Lawrence testified at trial that the test was a qualitative analysis and not a quantitative analysis, i.e., a test to determine the identity of a chemical compound and not the quantity of the compound.

We believe this evidence sufficiently established the chain of custody. Reedy was wearing the clothes when he went from the fire to the Lombardos'. Mr. Lombardo removed Reedy's trousers and threw them on the ground. When the paramedics arrived, one of them cut off Reedy's t-shirt and put it on the porch floor. The t-shirt was placed onto the stretcher with Reedy and carried with him to the ambulance. Nurse King cut off Reedy's underpants in the emergency room and apparently dropped them to the floor where they, along with the t-shirt that had been removed at the scene and placed on the stretcher, were found after Reedy was removed from the emergency room. At that point, the items were placed in a bag and their whereabouts were fully accounted for until the time they arrived at the laboratory.

One of Reedy's specific objections to the chain of custody was that the t-shirt stripped from him at the neighbor's house and placed on the porch could have become contaminated by gasoline in water on the neighbor's porch and that his underpants could have absorbed water containing gasoline when he was sitting on the porch. He also suggests the possibility that the t-shirt may have fallen from the stretcher at some point or touched something that may have been contaminated by gasoline. Furthermore, he says that there is a possibility that there was gasoline in the emergency room. There is, however, no evidence that gasoline was present on the neighbor's porch where Reedy waited for the ambulance. The ambulance attendant sufficiently accounted for the

location of the stretcher after it left the neighbor's house until it arrived at the emergency room and established that it was more likely than not that the stretcher and shirt did not come into contact with gasoline. Furthermore, the evidence showed that gasoline was not maintained in the emergency room.

■ Here, the chain of custody was proven. It is mere speculation that contamination could have occurred. Under the circumstances of the case, the trial judge did not abuse his discretion in admitting the evidence. Where there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight to be given the evidence. *Minter v. State*, 756 P.2d 10, 11 (Okla. Crim. App. 1988); *State v. Ciesielski*, 18 Ohio App. 2d 85, ___, 247 N.E.2d 321, 325 (1964); *People v. Pira*, 167 Ill. App. 3d 647, 656, 521 N.E.2d 1236, 1241, *appeal denied*, 122 Ill. 2d 588, 530 N.E.2d 258 (1988).

The appellant relies on the Court's statement in *Robinson v. Commonwealth*, 212 Va. 136, 183 S.E.2d 179 (1971), that the requirement of reasonable certainty is not met when some vital link in the chain of possession is not accounted for. Appellant's reliance on *Robinson*, however, is misplaced. Robinson was convicted of rape and malicious wounding of a young woman. Among the exhibits were a pair of lady's panties, a blouse and some pubic hairs, all taken from the victim at the hospital. The experts testified that the victim's panties revealed semen and blood stains, that wool fibers on the victim's blouse were similar to those of the sweater Robinson was wearing when arrested soon after the crime, and that the pubic hairs taken from the victim were characteristic of pubic hairs taken from Robinson's undershorts. The Commonwealth's evidence did not show, however, what was done with the exhibits from the time they were taken from the victim at the hospital until the time they were delivered to the FBI laboratory for analysis. Unlike the present case, in *Robinson* the nurse who delivered the panties and pubic hair to the police did not testify. Likewise, in *Robinson* there was no testimony as to how the police came into possession of the blouse or what was done with the blouse before it was delivered to FBI special agents who testified as experts in the case. Thus, in *Robinson* there was a gap in the evidence. There, the property was in the possession of persons who did not testify and were unavailable for cross-examination con-

cerning what may have happened to the property before it was analyzed. The Supreme Court opined that it was just as probable as not that the evidence was contaminated and thus, the reasonable certainty standard was not met. 212 Va. at 138, 183 S.E.2d at 180.

■ Reedy's chief complaints relate to what might have happened to his clothing before being collected as evidence. Here, there were no gaps in knowledge as to who had possession of the items at all times between the fire and the analysis. Everyone with access to the clothing testified and all were subject to cross-examination. We believe the evidence was sufficient to establish with reasonable certainty that the garments were not accidentally or intentionally contaminated from the time they got to the emergency room until they got to the laboratory. "The Commonwealth is not required to exclude every conceivable possibility of substitution, alteration, or tampering." *Pope v. Commonwealth*, 234 Va. 114, 121, 360 S.E.2d 352, 357 (1987), *cert. denied*, 485 U.S. 1015 (1988).

Furthermore, we point out that in *Robinson* the substantial gap in the chain of evidence concerned what took place after the clothing was taken from Robinson and before it arrived at the laboratory. In the present case, Reedy is complaining about what might have happened to the garments while they were still on him or in his presence before they were turned over to public authorities. In this case, there is no gap in the evidence as to what happened to the items while they were the responsibility of the authorities. Under Reedy's view of *Robinson*, an alleged criminal could insist that evidence found at the scene of a crime could not be admitted in evidence unless the Commonwealth could account for what happened to it between the time of the crime and the crime's discovery or could prove that the evidence existed in a pristine environment between the time of the crime and the crime's discovery.

In the present case, we find no abuse of discretion in admitting the laboratory analysis evidence because the proof showed with reasonable certainty that the clothing was not altered or contaminated between the time it was taken from the defendant and analyzed in the laboratory. The possibility that contamination may have occurred from some source other than gasoline used by Reedy to set the fire goes to the weight to be given the evidence and not its admissibility.

Accordingly, the judgment appealed from is affirmed.

*Affirmed.*

Koontz, C.J., and Barrow, J., concurred.