COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Friedman, Callins and White

DESHAWN REYNOLDS

MEMORANDUM OPINION*

v.      Record No. 0508-22-3                    PER CURIAM
                                                JULY 18, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF HENRY COUNTY
David V. Williams, Judge

(Matthew S. T. Clark, on brief), for appellant.

(Jason S. Miyares, Attorney General; Jason D. Reed, Assistant
Attorney General, on brief), for appellee.

Following a bench trial, the trial court convicted Deshawn Reynolds of two counts of

distributing cocaine as a third or subsequent offense and sentenced him to forty years' incarceration

with twenty years suspended.[1]  Reynolds contends that the evidence was insufficient to sustain his

convictions because the testimony of two confidential informants was inherently incredible as a

matter of law.  Reynolds also argues that the trial court erroneously admitted two certificates of

analysis at trial because "the Commonwealth failed to establish chain of custody of the purported

drugs."  After examining the briefs and record in this case, the panel unanimously holds that oral

argument is unnecessary because "the appeal is wholly without merit."  Code § 17.1-403(ii)(a);

Rule 5A:27(a).  For the following reasons, we affirm the trial court's judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The trial court dismissed three counts of possessing a firearm while distributing cocaine, two counts of possessing a firearm after conviction of a violent felony, and one count of distributing cocaine.

BACKGROUND

On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On November 28, 2018, Henry County Sheriff's Investigator Ben Whitlock and Lieutenant Timothy Brummit met two paid confidential informants, Patrick Golden and Eric Ellerbee, to conduct an undercover narcotics investigation of Reynolds, a suspected cocaine dealer. At Investigator Whitlock's direction, Golden called Reynolds and arranged to meet him at a car wash to purchase an "eight ball" of cocaine.[2] Investigator Whitlock gave Golden $170 of "Henry County Sheriff's Office funds" to make the purchase and instructed Ellerbee to drive Golden to the car wash. Golden wore a recording device that transmitted an audio and video recording to Investigator Whitlock in "real time."[3] Golden kept the device concealed in his pocket while traveling to and from the car wash, removing it only during the drug transaction with Reynolds.[4]

---

[2] According to Golden's trial testimony, the term "eight ball" is a colloquialism referring to 3.5 grams of cocaine.

[3] At trial, Investigator Whitlock testified that he did not instruct Golden "how to manipulate the device or turn it on and off." Golden also testified that he did not "know how to turn the [recording] device on or off or manipulate it."

[4] At trial, Golden acknowledged that the video from the recording device was "blacked out" while it remained in his pocket, but he maintained that was "the only time it would be blacked out" because Golden removed the device from his pocket when "doing the deal."

Before allowing them to depart, Investigator Whitlock searched Golden and Ellerbee to confirm that they did not have narcotics.[5] Lieutenant Brummit also searched Ellerbee's car and verified that it did not contain drugs.[6] Ellerbee then got in his car and drove Golden directly to the car wash to meet Reynolds. Investigator Whitlock and Lieutenant Brummit followed the informants to the car wash and parked on a hill nearby.

At the car wash, Ellerbee saw Reynolds waiting in a vehicle and parked behind it. Golden got into the front passenger seat of Reynolds' car, paid him $170 for an "eight ball" of cocaine, placed the drugs in his pocket, and returned to Ellerbee's vehicle. Investigator Whitlock and Lieutenant Brummit then followed Ellerbee and Golden back to their original "meet location." When they arrived, Golden handed Investigator Whitlock the recording device and a clear plastic bag containing a "white powder substance." Investigator Whitlock searched Golden and Ellerbee and confirmed that they did not have any remaining cash or narcotics. Lieutenant Brummit also searched Ellerbee's car and verified that it did not contain drugs. Subsequent forensic testing established that the white powder substance, including innermost packaging, weighed 4.426 grams and contained cocaine, a Schedule II controlled substance.

On December 13, 2018, Investigator Darrell Foley and Lieutenant Brummit had Golden and Ellerbee perform another "controlled buy" from Reynolds at the car wash using the same procedure as before. After searching the informants to confirm that they did not have any narcotics,[7] Investigator Foley gave Golden a recording device and $170 to purchase cocaine from

---

[5] Investigator Whitlock testified at trial that he searched the informants' "[o]uter clothing garments . . . from head to toe," including "any jacket, shoes, hats . . . ."

[6] Lieutenant Brummit testified at trial that he searched the "interior and exterior" of Ellerbee's car, including the "trunk compartment," by "starting on the driver's side" and "working . . . around to the passenger side in a counterclockwise motion."

[7] Investigator Foley testified at trial that he searched Ellerbee and Golden "from top to bottom, head to toe," but did not search their underwear.

Reynolds. Lieutenant Brummit also searched Ellerbee's car and verified that it did not contain any drugs.[8] Ellerbee got in his car and drove Golden to the car wash while the investigators followed them from a safe distance. Golden kept the recording device in his pocket and removed it only during the subsequent drug transaction.

At the car wash, Ellerbee parked and Golden approached Reynolds' vehicle. Golden paid Reynolds $170 for an "eight ball," placed it in his pocket, and returned to Ellerbee's car. Investigator Foley and Lieutenant Brummit then followed Ellerbee and Golden back to the "meet location," where Golden handed Investigator Foley the recording device and a clear plastic baggie containing an "off-white chunk substance." Investigator Foley searched the informants again and confirmed that they did not have any remaining cash or drugs. Lieutenant Brummit also searched the vehicle and verified that it did not contain any drugs. Forensic testing established that the "off-white chunk substance," including innermost packaging, weighed three grams and contained cocaine, a Schedule II controlled substance.

The audio and video recordings from the recording device Golden wore during each controlled buy established that at some point during this first outing, Golden stated, "[T]his shit is wasting everywhere." Golden also mentioned paying someone $120. In addition, during the return trip from the first controlled buy, Ellerbee's car stopped, a car door opened, and someone said, "I'll see you later."

---

[8] Lieutenant Brummit testified at trial that he searched Ellerbee's car in the same manner as during the first undercover investigation.

- 4 -

At trial, Golden and Ellerbee testified[9] that they did not "make any stops" when traveling to and from the car wash for each controlled buy. Golden also denied altering the drugs he purchased from Reynolds or withholding any of the funds the investigators provided to purchase them. Admitting that he told Ellerbee "this shit is wasting everywhere," Golden explained that he did so because Reynolds had "had coke and shit everywhere in his car" when Golden bought drugs from him. Golden also maintained that he paid Reynolds $170, not $120, during each controlled buy, although Reynolds had mentioned previously selling "a crackhead a fifty dollar piece of rock for a hundred and twenty" dollars. In addition, Golden denied knowing that the recording device he wore would transmit only "blacked out" video images to the investigators unless he removed the device from his pocket, although Investigator Foley testified that Golden was aware of this. Golden also denied knowledge of the drug trade, even though Investigator Whitlock testified that Golden was familiar with drug transactions.

Investigator Whitlock testified that he did not see Ellerbee stop his car when driving to and from the first controlled buy, although he sometimes lost sight of Ellerbee's car for a "split second." He also watched and listened to the transmission from Golden's recording device while following Ellerbee. Investigator Brummit testified that he did not see the informants make any unscheduled stops during the first undercover investigation. Nevertheless, he stated, "[T]he area we met in before this deal and after was at that time secured by a gate and a guard," so it was "[p]ossible that [the informants] stopped to get us ahead so that they could follow us there." In

---

[9] During their testimony, Golden and Ellerbee acknowledged their criminal records: Golden, a prior misdemeanor conviction from 2018 for providing false identification to law enforcement; Ellerbee, eight felony convictions and two misdemeanor convictions for offenses involving moral turpitude. Ellerbee and Golden also testified that police paid them for performing each controlled buy.

addition, Investigator Foley testified that Ellerbee and Golden drove directly to and from the second controlled buy and Foley monitored Golden's recording device as they did so.[10]

Reynolds objected to the certificates of analysis for the two purchases.[11] At the conclusion of the evidence, Reynolds moved to strike the charges, arguing that Golden and Ellerbee's testimony was inherently incredible as a matter of law. The trial court denied the motions in relevant part and convicted Reynolds of two counts of distributing cocaine as a third or subsequent offense. Reynolds appeals.

ANALYSIS

I. Sufficiency

Reynolds contends that the evidence was insufficient to sustain his convictions for distributing cocaine as a third or subsequent offense because Golden and Ellerbee's testimony was inherently incredible as a matter of law. Reynolds does not dispute that the informants' testimony, if believed, was sufficient to prove the elements of cocaine distribution beyond a reasonable doubt. Rather, he asserts that Golden and Ellerbee's criminal records, motive to fabricate their claims, and inconsistencies in their accounts rendered their testimony unworthy of belief. We disagree.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original)

---

[10] At trial, the Commonwealth also introduced certified copies of Reynolds' prior convictions from 2008 for distributing cocaine and three counts of distributing cocaine as a second offense. In addition, the Commonwealth introduced the audio and video recordings from the recording device Golden wore during each undercover investigation. Finally, the Commonwealth introduced images from the video recordings that depicted Reynolds packaging the cocaine he sold to Golden.

[11] The Commonwealth asserts that the objections were too vague to preserve Reynolds' chain of custody arguments and that Reynolds failed to obtain any specific ruling to this point.

(quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Such deference stems, in part, from the trial court's "opportunity to observe the testimony and demeanor of all witnesses." *Lopez v. Commonwealth*, 73 Va. App. 70, 81 (2021). Accordingly, settled principles dictate that "[d]etermining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (second alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "[T]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002) (quoting *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

The record supports the trial court's finding that Golden and Ellerbee's testimony was not inherently incredible. At trial, Golden testified that he purchased cocaine from Reynolds on two separate occasions. Consistent with that testimony, Golden's video recorded Reynolds holding and packaging the cocaine he sold to Golden. *See Lambert v. Commonwealth*, 70 Va. App. 740, 759-60 (2019) (holding that witness's testimony was not inherently incredible when corroborated by other evidence). The balance of the evidence also corroborated Golden's testimony that he did not alter the cocaine Reynolds sold to him or steal any of the money the investigators provided to purchase it. At trial, Investigators Whitlock and Foley testified that they thoroughly searched Golden and Ellerbee before and after each drug transaction and confirmed that neither informant had withheld any cash or narcotics. Lieutenant Brummit also searched Ellerbee's vehicle before and after each drug deal and verified that it did not contain drugs. The investigators further mitigated any risk of Golden or Ellerbee improperly disposing of the drugs or money by following them to and from the car wash for each controlled buy and ensuring that Ellerbee and Golden did not deviate from their mission.

Although Golden and Ellerbee were paid informants with criminal records, that circumstance did not render their testimony inherently incredible. *See Yates v. Commonwealth*, 4 Va. App. 140, 144 (1987) (holding accomplice's testimony pursuant to a plea agreement was not inherently incredible despite his felony record and self-interest in testifying). Rather, the trial court was entitled to consider that circumstance and weigh Golden and Ellerbee's testimony accordingly. *Id.* Moreover, the trial court was not required to accept Golden's testimony in toto. To the contrary, a "fact finder's evaluations of credibility are not limited to choosing between competing accounts offered by different witnesses," but include "resolving conflicts in a single witness's testimony, accepting that part of the testimony it deems credible and rejecting the portion it deems incredible." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (first citing

*Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010); and then citing *Hopkins v. Commonwealth*, 230 Va. 280, 293 (1985)). Thus, the trial court could reject Golden's explanations concerning the "blacked out" video and his denial of knowledge of the drug trade as implausible while accepting the rest of his testimony as credible. *Id.*

In sum, the record supports the conclusion that Golden and Ellerbee's testimony was not inherently incredible as a matter of law. Therefore, a reasonable finder of fact could rely on the informants' testimony and conclude beyond a reasonable doubt that Reynolds was guilty of two counts of distributing cocaine as a third or subsequent offense. Accordingly, the trial court did not err in denying Reynolds' motion to strike.

## II. Chain of Custody

Reynolds argues that the trial court erred in admitting the certificates of analysis at trial because "the Commonwealth failed to establish chain of custody of the purported drugs." Specifically, Reynolds asserts that chain of custody was not established because Golden's testimony that he did not alter the drugs he purchased from Reynolds was inherently incredible due to Golden's criminal history, motive to fabricate the allegations, and inconsistencies in his account.

Reynolds' arguments regarding chain of custody are based on mere speculation. When considering an admissibility issue, this Court must "view the evidence in the light 'most favorable to the Commonwealth as the prevailing party on this issue in the circuit court.'" *Fields v. Commonwealth*, 73 Va. App. 652, 672 (2021) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 617 (2009)). "The determination on a chain of custody challenge lies with the trial court's broad discretion and will not be overturned on appeal absent an abuse of that discretion." *Pope v. Commonwealth*, 60 Va. App. 486, 511 (2012) (citing *Crews v. Commonwealth*, 18 Va. App. 115, 118 (1994)). Additionally, as to chain of custody, the party offering the evidence must show with reasonable certainty that there has been no alteration or substitution of the evidence,

"[b]ut the burden is not absolute that 'all possibility of tampering' be eliminated." *Robinson v. Commonwealth*, 212 Va. 136, 138 (1971).[12]

Reynolds essentially argues that there is a *possibility* of tampering because there was a time when Golden was monitored by law enforcement via audio, rather than video. However, this argument is mere speculation. *See Reedy v. Commonwealth*, 9 Va. App. 386, 391 (1990) (finding that mere speculation does not amount to "an abuse of discretion to admit the evidence and let what doubt there may be go to the weight to be given the evidence"). "The Commonwealth is not required to exclude every conceivable possibility of substitution, alteration, or tampering." *Id.* at 392 (quoting *Pope v. Commonwealth*, 234 Va. 114, 121 (1987)). Moreover, "[w]hether or not Golden deviated in some minor way from investigators' procedures, as alleged by Reynolds, would go the *weight* rather than the admissibility of the evidence." *See Pope*, 60 Va. App. at 511.

The evidence presented here included the thorough steps taken by investigators to search both Golden and Ellerbee before and after each purchase as well as the steps taken to monitor Golden and Ellerbee as they travelled to and from the controlled buys. The evidence presented by the prosecution was sufficient to lay a foundation of admissibility. The trial court properly rejected Reynolds' speculative attack on the chain of custody.

CONCLUSION

For the above reasons, we affirm the trial court's judgment.

*Affirmed.*

---

[12] The Commonwealth claims the chain of custody objections were waived below. We assume without deciding that the objections are preserved.