## Richmond

LARRY DONELL ROBINSON v. COMMONWEALTH OF VIRGINIA.

September 1, 1971.

Record No. 7481.

Present, All the Justices.

*Harry P. Hart (Murphy & Hart, on brief), for plaintiff in error.*

*Vann H. Lefcoe, Assistant Attorney General (Andrew P. Miller, Attorney General, on brief), for defendant in error.*

SNEAD, C.J., delivered the opinion of the court.

Larry Donell Robinson, defendant, was indicted in two counts for the rape and malicious wounding of a young woman in the City of Alexandria. A jury found Robinson guilty of both offenses, and fixed his punishment at thirty-five years in the State Penitentiary for rape and fifteen years for malicious wounding. The trial court sentenced Robinson in accordance with the jury verdict. We granted him a writ of error to that judgment.

Upon assurance of the Commonwealth's Attorney that the con-

tinuity of possession of certain exhibits, including a pair of lady's panties, a blouse and some pubic hair taken from the victim, would be shown, the court permitted P. R. Bidez and M. S. Clark, FBI special agents, to express their opinions resulting from their examination of these exhibits. Bidez testified that the above mentioned exhibits were delivered to him by Douglas M. Thompson, a member of the Alexandria Police Department. The agents' examinations revealed that semen stains and blood stains were on the panties; that on the blouse were wool fibers similar to wool fibers in the sweater Robinson was wearing when arrested soon after the crimes were committed; and that the pubic hair taken from the victim had fifteen similar characteristics to a pubic hair removed from Robinson's undershorts. These exhibits were returned to Officer Thompson by Bidez after the examinations were made.

Officer Thompson, who was in charge of the Alexandria police property room, testified that he received from a nurse at the hospital the victim's panties and an envelope containing some pubic hair. He also stated that he received the victim's blouse from Sergeant Pendergraph, another officer of the Alexandria Police Department. These items, the testimony shows, were properly handled by Officer Thompson. Each exhibit was sealed in a bag and kept out of contact with other exhibits the police had obtained through their investigation.

The victim identified the blouse and the panties as garments she was wearing when attacked. She also testified that pubic hair was taken from her at the hospital and placed in an envelope. She identified an envelope as being like the one used.

However, the Commonwealth's evidence does not show what was done with these exhibits from the time they were taken from the victim to the time they were delivered to Officer Thompson. The nurse, who delivered the panties and pubic hair to Officer Thompson, did not testify. Nor is there any testimony as to how Sergeant Pendergraph came into possession of the blouse or what he did with the blouse before it was delivered to Officer Thompson.

In this appeal the critical question is whether the trial court erred in admitting into evidence the panties, blouse and pubic hair, and the opinion testimony of the FBI agents relative to these exhibits.

Counsel for Robinson asserts that the failure of the Commonwealth to call as a witness the unidentified nurse caused a break in the chain of possession of the panties and the pubic hair. Likewise, the failure of Sergeant Pendergraph to testify concerning the blouse

the victim was wearing when attacked caused a break in the chain of possession of it. Because an unbroken chain of possession was not established, it is argued, the exhibits and the opinions of the FBI agents concerning their analyses of them were not admissible.

In *Rodgers* v. *Commonwealth*, 197 Va. 527, 90 S.E.2d 257 (1955) the results of a blood analysis had been admitted into evidence without sufficient identification of the blood as that of the defendant. We said in that case "[s]uch an analysis is important evidence in a trial of this sort, and care must be exercised to establish the essential links in the chain of evidence relied on to identify the blood analyzed as being the blood taken". 197 Va. at 531, 90 S.E.2d at 259. The basic rule for admitting demonstrative evidence is that the burden is upon the party offering the evidence to show with reasonable certainty that there has been no alteration or substitution of it. But the burden is not absolute that "all possibility of tampering" be eliminated. *People* v. *Riser*, 47 Cal. 2d 566, 580-81, 305 P.2d 1, 10 (1957). However, "[t]he requirement of *reasonable certainty* is not met when some vital link in the chain of possession is not accounted for, because then it is as likely as not that the evidence analyzed was not the evidence originally received." (Italics supplied.)

In the case at bar the Commonwealth failed to establish a chain of possession of the panties, blouse and pubic hair. It is not reasonably certain from the testimony presented that these exhibits were in the same condition when analyzed as they were when taken from the victim. Furthermore, it was not shown that the pubic hair taken from the victim was the same public hair that was analyzed.

A vital link in the chain of possession of these exhibits was the treatment they received from the time they were taken from the victim until delivered to Officer Thompson. Yet, the Commonwealth failed to establish this vital link in the chain of possession. We cannot assume that these exhibits were properly handled. Without an unbroken chain of possession of the panties, blouse and pubic hair, they were not admissible as evidence insofar as they supplied a basis for the opinion testimony of the FBI agents, who had examined them. Thus, the opinions of the FBI agents were also not admissible.

It is true that the blouse and panties were identified at the trial by the victim as a part of the clothes she was wearing when attacked. The Commonwealth contends that they were properly admitted because the victim identified them. If they had been admitted only to establish what the victim was wearing when attacked, then we would agree with the Commonwealth's position. But the blouse and

the panties were also admitted to supply a basis for the opinion testimony of the FBI agents. The mere fact the blouse and the panties were identified did not prove the chain of possession necessary to validate the FBI analysis of them.

■ The error in admitting the exhibits as a basis for the testimony of the FBI agents was not harmless. In his closing argument before the jury, the Commonwealth's Attorney stressed the importance of this evidence. He referred to it as "scientific proof to back up that young lady's story that this man is the one."

For the reasons stated, the judgment appealed from is reversed and the case remanded for a new trial.

*Reversed and remanded.*

HARRISON, J., dissenting.

I dissent. The victim was attacked and beaten with an iron wrench, choked and raped. Defendant was arrested about thirty minutes after the rape, identified by the victim as her assailant, and thereafter identified by her at the preliminary hearing and at the trial. The identification was positive and unequivocal, and the evidence establishing his guilt is clear and overwhelming.

The only issue before this court concerns the chain of possession and therefore the integrity of certain exhibits introduced by the Commonwealth. I disagree with the conclusion of the majority that the trial court erred in permitting the introduction of the underpants and blouse worn by the victim at the time of the rape and of certain pubic hairs that were taken from her by a nurse.

The testimony is that the only contact that occurred, or could have occurred, between the victim and the defendant was at the time of the rape. The defendant was identified by the victim before she was taken to the hospital for treatment. At the time of this identification she was inside the apartment building and viewed the defendant who, with other individuals, was on the outside. Immediately after identification was made defendant was arrested and taken to the police station where his clothes were removed, packaged, sealed and delivered to the property custodian for the police department.

Analysis of defendant's sweater disclosed that it consisted of six different colors of woolen fibers. Fibers were found on the surface of the victim's blouse having the same six colors and microscopic appearance and qualities as those on the sweater. Analysis of the defendant's undershorts disclosed two rigid semen stains on the fly,

and one Caucasian pubic hair which had been forcibly removed from the skin. Analysis of the victim's underpants disclosed a rigid semen stain in the crotch. Also noted on the victim's underpants and blouse were blood stains.

The victim was taken to the emergency room of a local hospital where she remained for approximately two hours during which time a nurse removed from her a number of pubic hairs. Thereafter these hairs, as well as the Caucasian pubic hair found on the defendant's underpants, were analyzed and found similar based on about fifteen different microscopic characteristics.

Clearly it was proper for the court to have admitted in evidence the defendant's underpants and sweater. The continuity of their possession is unquestioned. It is equally clear that the introduction of the victim's blouse, on which was found the same type and kind of fibers as compose the defendant's sweater, was proper, since there was evidence that the only contact between the defendant's sweater and the victim's blouse occurred at the time of the rape.

The defendant was charged with both rape and felonious assault, and it was proper for the Commonwealth to show the extent of the injuries sustained by the victim. She said that the defendant beat her with a wrench and that she bled profusely. She positively identified the underpants and blouse which were offered in evidence as being the ones that she was wearing at the time, and both were bloodstained —all consistent with and corroborative of her testimony as to the extent of the assault.

During the time the victim was in the emergency room of the hospital, the pubic hairs were withdrawn and placed in a white envelope all in her presence. At the trial she so testified, and was shown the envelope, which contained the hairs and asked:

"Q. I show you this envelope. Can you identify that?
"A. That looks like—yes.
"Q. The envelope that your pubic hairs—
"A. Yes.
"Q. —were placed in?
"A. Yes."

It therefore appears that the victim did identify the envelope in which the hairs taken from her were placed. This envelope contains on its face the name and address of the hospital—"The Alexandria Hospital, Alexandria, Virginia 22314". Written on the envelope is the

following: "[Victim's name]—only pubic sample from above victim —Turned over to Officer Thompson by R. N. Watts on 2/4/69 at 2:20 P. M." Police Officer Thompson testified that he received this envelope from the nurse at the hospital. Obviously he was referring to Nurse Watts. The handling of this exhibit thereafter is not questioned.

While the nurse who delivered the victim's underpants to Thompson for packaging and safekeeping should have been called as a witness, the failure to do so should not constitute reversible error under the facts and circumstances of this case. The wrapping in which this undergarment was packaged and sealed has this notation thereon: "2/4/69 at 1:30 P.M. undergarment from [the victim] turned over to Officer Thompson by Mrs. Watts, R. N." The conclusion is inescapable that the Mrs. Watts who delivered the undergarment and pubic hairs to Officer Thompson is a registered nurse and is one and the same person as the nurse who was on duty in the emergency room in the Alexandria hospital to which the victim was taken and who is alluded to in the testimony by the officers.

The possibility is extremely remote that there could have been a tampering with the exhibits or any transfer of particles, fibers, semen or blood between the victim or her clothing, and the defendant or his clothing, subsequent to the rape.

The rule of law which requires continuity in the chain of possession of exhibits must be given a reasonable construction, and as we have said, the burden is not absolute that all possibility of tampering be eliminated.

The undergarments of the victim and the defendant were admissible to prove that there had been a consummated act of intercourse as claimed by the prosecutrix. The presence of semen stains on both undergarments was corroborative evidence of her statements. The pubic hair found on the defendant's undershorts came from a Caucasian. Again this was corroborative of the victim's testimony that she was raped by a non-Caucasian, and admissible for that purpose.

The cases relied on by the majority do not control here for they concern the results of fingerprinting or of a blood analysis. Neither fingerprints nor blood can be identified except by experts and through analysis. With the exception of the pubic hairs, all of the physical evidence in this case is susceptible of positive identification by persons other than experts and has been so identified.

The possibility exists in this case, as it does in all cases, that exhibits may be tampered with by those in whose care they may be

entrusted pending trial. However, there is not the slightest evidence or intimation in the record before us that any exhibit has been tampered with, or handled other than in a routine and proper manner.

It is true that Officer Pendergraph, who delivered the victim's blouse and slacks to Officer Thompson, did not testify. However, Thompson testified that when he received them from Pendergraph they were then in a paper bag (introduced as an exhibit) and that it (the bag) was immediately sealed, initialed and dated. He further testified that at no time during which these exhibits were in his possession did they come in contact with the defendant's sweater or underpants.

> While the "[b]urden is on the party relying on expert testimony to prove identity of object upon which such testimony is based, but practicalities of proof do not require such party to negative all possibility of substitution or tampering and he need only establish that it is reasonably certain that substitution, alteration, or tampering did not occur. *Eisentrager* v. *State* (Nev) 378 P2d 526." Annot., 21 A. L. R. 2d 451 (1970).

The police investigation in this case was expeditious and thorough. The record reflects that little more than two hours elapsed between the commission of the crime, the identification of the perpetrator, the arrest of the defendant, the hospitalization of the victim and the processing, numbering and sealing of physical evidence. All clothing taken from either the defendant or the victim was packaged, sealed, numbered and initialed, and the notations thereon show that it was all done on February 4, 1969, the date of the offense. A number of police cars and officers responded when the victim reported the rape. Some accompanied the defendant to jail and some the ambulance that took the victim to the hospital. It is clear a determination was made that, for the protection of both the Commonwealth and the accused, the clothing of the defendant and the victim should be removed, examined and analyzed. This was done routinely. The clothing of defendant was removed at the city jail. The clothing of the victim and pubic hairs were obviously removed at the hospital. The officers testified that there was no contact between the two.

As was pointed out in Annot., 21 A. L. R. 2d 1219 (1952):

> "The basic question is whether a thing (1) analyzed or examined by an expert in his laboratory or (2) produced in court as a basis

for his demonstrations before the jury can be shown to have been taken from a particular human body. Proof of this identity involves showing in the first class of cases that (a) the thing was taken (b) from the particular body from which it was supposed to be taken, and that thereafter it was properly (c) kept and, if necessary, (d) transported and (e) delivered to the expert who made the analysis or examination; and in the second class that like care was exercised until the thing was produced in court."

The evidence in the instant case meets the foregoing standard, establishes with reasonable certainty that there was no substitution, alteration or tampering with the exhibits, and was properly admitted for consideration by the jury.

I would affirm the conviction of the defendant.

I' ANSON, J., joins in this dissent.