COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Coleman and Fitzpatrick
Argued at Alexandria, Virginia


CHARLES GILBERT TAYLOR

v.          Record No. 1977-94-4          MEMORANDUM OPINION[*]
                                          BY JUDGE SAM W. COLEMAN III
COMMONWEALTH OF VIRGINIA                  JULY 18, 1995

            FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                      Richard B. Potter, Judge

            JoAnne B. Butt for appellant.

            Robert H. Anderson, III, Assistant Attorney General
            (James S. Gilmore, III, Attorney General, on brief),
            for appellee.


        Charles Gilbert Taylor was convicted by a jury of

involuntary manslaughter.  He contends that the trial court erred

by admitting into evidence the results of a blood alcohol serum

test because the Commonwealth did not prove an unbroken chain of

custody for the blood sample and did not prove that the method

for drawing and testing the blood sample was reliable.  For the

reasons that follow, we affirm the trial court's determinations.

        Charles Gilbert Taylor drove his pickup truck across the

center line of the highway and struck another vehicle head-on,

killing the car's driver.  John Whitcomb, an FBI special agent,

witnessed the accident.  Whitcomb, while assisting Taylor from

his truck, noticed a very strong odor associated with alcoholic

beverages on Taylor's breath.  Another witness, Tawana Mack, who

_____

        [*] Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

assisted Whitcomb, also noticed the smell of alcoholic beverages from inside the truck. Greg Duvall, a Virginia State Trooper who also assisted Taylor from the truck, observed that Taylor was "unsteady on his feet" and had "an obvious odor of alcohol about him." Mark Chadwick, an emergency medical technician at the scene, noticed a strong odor of alcohol on Taylor's breath.

At the hospital, Deborah Oaks, an emergency room nurse, tended to Taylor. Because Taylor was a trauma patient, Oaks was required to take a sample of his blood. She cleansed his arm with a seventy percent isopropyl alcohol solution and wiped the area dry with a sterile four-by-four gauze pad. Oaks drew the blood, injected it into sealed vials, placed Taylor's name and hers on the vials, placed the vials on Taylor's stretcher, and waited with him. This area of the emergency room was accessible only to physicians and to hospital employees.

Oaks testified that shortly after placing the vials on the stretcher, she "made sure they [the vials] were taken" to the hospital laboratory for analysis. The laboratory was located one hundred feet from where Taylor was on the stretcher. Oaks could not remember or identify the person who took the blood vials to the lab. Jean Scott, a medical technologist, testified that she received the blood vials at the lab and performed the blood serum analysis on the sample. Scott was not able to remember who brought the blood vials to the lab. She said, "I'm not sure whether an emergency room staff member brought it to the lab or a

-2-

lab staff member brought it to the lab."

At trial, Nurse Oaks testified that the procedure she used for cleansing Taylor's arm and drawing his blood is a standard and customary procedure. She acknowledged, however, that had Taylor been brought to the hospital by police for a "legal" blood alcohol test, rather than as a trauma patient, she would have cleansed his arm with soap and water. Jean Scott, the medical technologist, testified that the manufacturer of the machine that the hospital uses for measuring blood alcohol content recommends "that [when taking blood for 'legal' purposes,] we use soap just in the off chance that the alcohol swab could cause some contamination." Scott testified that the machine is calibrated regularly and was in proper working order.

Dr. Anh Huynh, a state toxicologist, testified that the blood alcohol test results showed that when Taylor's blood was drawn, the serum contained 181.6 milligrams of alcohol per deciliter of blood. He equated this amount to a whole blood alcohol level (B.A.C.) of .155. He stated that a B.A.C. of .155 would affect a person's perception, vision, judgment, and coordination. Dr. Huynh testified that a person with that quantity of alcohol in his blood "would [have] some difficulties of walking straight" and that "also the manner you brake or you swerve the car" would be affected.

I. CHAIN OF CUSTODY

Taylor contends the chain of custody of the blood sample was

broken because neither Nurse Oaks nor Jean Scott could account for how or who handled or took the blood sample from the stretcher to the laboratory.

A party proffering scientific test results performed upon a substance must establish by a preponderance of the evidence that the substance tested is authentic, that is, that it is the substance which it is purported to be.  See Ives v. Commonwealth, 184 Va. 877, 882, 365 S.E.2d 904, 906 (1946).  Authentication requires "proof of a chain of custody and a showing with reasonable certainty that the item had not been altered, substituted, or contaminated prior to analysis, in any way that would affect the results of the analysis."  Washington v. Commonwealth, 228 Va. 535, 550, 323 S.E.2d 577, 587 (1984) (emphasis added), cert. denied, 471 U.S. 1111 (1985).  Only if a "vital link in the chain of possession is not accounted for," is the reasonable certainty requirement not met, "because then it is as likely as not that the evidence analyzed was not the evidence originally received."  Robinson v. Commonwealth, 212 Va. 136, 138, 183 S.E.2d 179, 180 (1971), cert. denied, 454 U.S. 895 (1981).

> [The Commonwealth] is not required to exclude every conceivable possibility of substitution, alteration, or tampering.  All that is required in order to establish a chain of custody is that the Commonwealth's evidence "afford reasonable assurance that the exhibits at trial are the same and in the same condition as they were when first obtained."

<u>Pope v. Commonwealth</u>, 234 Va. 114, 121, 360 S.E.2d 352, 357 (1987), <u>cert. denied</u>, 485 U.S. 1015 (1988) (quoting <u>Smith v. Commonwealth</u>, 219 Va. 554, 559, 248 S.E.2d 805, 808 (1978)).

The Commonwealth's evidence reasonably assures that Taylor's blood samples taken by Oaks were the same samples tested by Scott and that they had not been altered, tampered with, or substituted. Oaks took the blood sample, placed it in vials, labeled the vials, placed the vials on a stretcher with Taylor, and waited there with him. Access to the area was limited to physicians and employees. Scott stated that either an emergency room staff member or a lab staff member brought the sealed vials, which contained the blood sample, to her at the lab. The vials were carried only one hundred feet from the stretcher to the lab.

The links in the chain of possession in the hospital were sufficiently accounted for to provide reasonable assurance that the blood sample had not been altered, adulterated, or substituted. The evidence is sufficient to support the trial court's finding that the blood sample was authenticated as Taylor's without being altered.

## II. RELIABILITY OF BLOOD TESTING

The appellant contends that the blood test result is invalid because the nurse used an alcohol swab, rather than soap and water, to cleanse Taylor's arm and, as a consequence, probably contaminated the blood sample with isopropyl alcohol. Thus, he argues, the trial court erred by admitting the blood test results

into evidence.

The admissibility of evidence is within the sound discretion of the trial court. We will not disturb the trial court's ruling to admit evidence absent an abuse of discretion. Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988) (citation omitted). "When scientific evidence is offered, the court must make a threshold finding of fact with respect to the [fundamental] reliability of the scientific method." Spencer v. Commonwealth, 240 Va. 78, 97, 393 S.E.2d 609, 621, cert. denied, 498 U.S. 908 (1990).

Code § 18.2-268.5 requires that, when withdrawing blood for purposes of a DUI prosecution under Code § 18.2-266, the area from which blood is to be drawn must be cleansed with soap and water, polyvinylpyrrolidone iodine, or benzalkonium chloride. Because the DUI statutes specify the means for cleansing the puncture area, failure to comply with the statutory requirement necessitates that the prosecution be dismissed. See Brush v. Commonwealth, 205 Va. 312, 136 S.E.2d 864 (1964), and Kyhl v. Commonwealth, 205 Va. 240, 135 S.E.2d 768 (1968). The statutory requirements of Code § 18.2-268 are to be strictly applied, Lutz v. City of Richmond, 205 Va. 93, 97-98, 135 S.E.2d 156, 159-60 (1964), but the requirements apply only to DUI prosecutions under Code § 18.2-266, Essex v. Commonwealth, 228 Va. 273, 322 S.E.2d 216 (1984), and not to an involuntary manslaughter prosecution under Code § 18.2-36.

In an involuntary manslaughter prosecution, the degree of the driver's intoxication or impairment from alcohol ingestion is relevant to a determination of the driver's "negligence, whether ordinary, gross, or wanton" so as to demonstrate a reckless disregard of human life. Id. at 283, 322 S.E.2d at 221–22. For blood test results to be admissible to prove the degree of impairment or intoxication, the evidence must prove "the reliability of the procedures used," Essex, 228 Va. at 285, 322 S.E.2d at 223, that is, that the procedures utilized are likely to produce a reliable result. The burden is on the Commonwealth, as the proponent of the evidence, to prove that the procedures used yielded a reliable result.

Nurse Oaks testified that, except when drawing blood for DUI prosecutions, the traditional and customary procedure for cleansing and sterilizing the puncture area is with an isopropyl alcohol solution. She testified that before drawing the blood, she dried the area with a sterile gauze pad. While no direct evidence was offered that the procedure could not affect the test results, from Oak's testimony, the fact finder could infer that because the area was dry, no isopropyl alcohol remained to contaminate the area or the blood sample and, therefore, that the test results were accurate and reliable. Accordingly, the Commonwealth met its burden of proving the reliability of the testing procedure.

The evidence offered by Taylor concerning the recommended

procedure by the manufacturer of the machine for testing goes to the weight of the evidence and not its admissibility.  <u>See</u> <u>State v. LaFountain</u>, 231 A2d 635 (1967).  The trial court did not abuse its discretion by admitting the blood test results for the purpose of proving the effects of alcohol ingestion upon Taylor.

Therefore, we affirm the involuntary manslaughter conviction.

<u>Affirmed.</u>

BENTON, J., dissenting.


To introduce a scientific analysis of blood, the proponent of the evidence must first establish as a proper foundation for the admission of the analysis a chain of possession of the blood that was analyzed. Washington v. Commonwealth, 228 Va. 535, 550, 323 S.E.2d 577, 587 (1984), cert. denied, 471 U.S. 1111 (1985). The rule is often stated as follows:

> The basic rule for admitting demonstrative evidence is that the burden is upon the party offering the evidence to show with reasonable certainty that there has been no alteration or substitution of it. . . . However, "[t]he requirement of reasonable certainty is not met when some vital link in the chain of possession is not accounted for, because then it is likely as not that the evidence analyzed was not the evidence originally received."

Robinson v. Commonwealth, 212 Va. 136, 138, 183 S.E.2d 179, 180 (1971)(citation omitted). The evidence in this case failed to establish a chain of possession.

The Commonwealth failed to present any evidence to account for the handling of Taylor's blood from the time it was taken from Taylor until the time it was delivered to the laboratory. Nothing in the record or in the majority's opinion addresses the void created by the failure to account for this vital link in the chain of possession. Approving the admission of this evidence violates the fundamental principle that "where the substance analyzed has passed through several hands the evidence must not leave it to conjecture as to who had it and what was done with it

-9-

between the taking and the analysis".  <u>Rodgers v. Commonwealth</u>, 197 Va. 527, 531, 90 S.E.2d 257, 260 (1955).

For these reasons, I would hold that the trial judge erred in admitting the blood analysis report.  Therefore, I dissent.