COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Senior Judge Cole
Argued at Richmond, Virginia


HARRY ANTWAN TRAYNHAM
                                  MEMORANDUM OPINION[*] BY
v.        Record No. 0690-96-2      JUDGE MARVIN F. COLE
                                       JULY 1, 1997
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF HALIFAX COUNTY
                 William L. Wellons, Judge

        Theodore N. Tondrowski (Bowen & Bowen, on
        brief), for appellant.

        Richard B. Smith, Assistant Attorney General
        (James S. Gilmore, III, Attorney General, on
        brief), for appellee.


     Tried by a jury in Halifax County, Harry Antwan Traynham

(appellant) was convicted of the murder of Anthony Whitlock, the

attempted murders of Virgil Talley and Kenneth Brooks, using a

firearm in the commission of the murder and attempted murders,

and discharging a firearm from a motor vehicle.  On appeal,

appellant contends that the trial court erred (1) in allowing the

testimony of Agent Ronald Campbell because the Commonwealth did

not provide appellant with Campbell's diagram of the crime scene,

(2) in admitting the shell casing found inside a vehicle

recovered by the police on the night of the shootings, and (3) in

refusing to permit appellant to reopen the evidence and recall

two witnesses for questioning about the notes of a police

---

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

officer.  Finding no error, we affirm appellant's convictions.

<u>BACKGROUND</u>

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." <u>Maynard v. Commonwealth</u>, 11 Va. App. 437, 439, 399 S.E.2d 635, 637 (1990) (<u>en</u> <u>banc</u>).  So viewed, the evidence demonstrated that between 8:30 and 9:00 p.m. on February 13, 1995, a blue Volkswagen Jetta passed by Brooks and Whitlock as they stood together on a street within Westside Trailer Park.  Brooks identified appellant as the driver of the car and Kevin Newman as the front seat passenger.  Through the car window Newman fired a gun at Brooks and Whitlock.  Brooks was not hurt, but Whitlock suffered a fatal gunshot wound.

The Jetta then turned around and pursued a car driven by Talley.  Shots were fired from the Jetta at Talley's vehicle as Talley tried to escape.

Residents of the Westside Village apartments near the scene of the shootings saw two African-American males get out of a Jetta that evening and enter the apartment of Curly Chandler.  One witness testified that appellant and Newman arrived at the apartment at 9:00 p.m. and that a Jetta was parked out front.  About fifteen minutes after the arrival of appellant and Newman, the police surrounded the Jetta and looked inside it using flashlights, but did not notice anything unusual.  The police towed the Jetta to Franklin's Garage and impounded it there.

Shortly after the car was towed, appellant and Newman fled, leaving the apartment by the patio door.

Agent John Holt testified that he interviewed appellant, other suspects, and witnesses in connection with the case. Initially, appellant told the police that he was visiting relatives and friends on the evening of February 13, 1995. During a second interview, appellant gave a different account of his whereabouts on February 13. Later, appellant told Holt that Newman had shot Whitlock and that he had seen Newman in the Jetta on February 13. Appellant denied being in the car with Newman when the shooting occurred. According to appellant, Newman had contacted him after the shooting and asked appellant to meet him at Chandler's apartment. After appellant arrived, Newman said he had gotten "one of the two," and that he needed appellant to drive the car. While they were still in Chandler's apartment, the police arrived on the scene and found the Jetta. Appellant and Newman left the apartment by the patio door.

I.

Agent Campbell, an evidence technician, responded to Westside Trailer Park on February 14, 1995. Campbell prepared a diagram of the scene based upon his investigation of the incident.

At trial, appellant objected to the Commonwealth's use of the diagram because it had not been provided to the defense in discovery. Appellant also objected to Campbell drawing

conclusions as an expert witness concerning bullet trajectories. The trial judge noted that, although no written discovery order had been entered, "the Court had ordered discovery consistent with the motions filed by counsel for the defendant." Appellant's discovery motion had requested "written reports of . . . ballistic tests, . . . [and] other scientific reports . . . known by the Attorney for the Commonwealth to be within the possession, custody or control of the Commonwealth." The trial judge ruled that the prosecutor should have disclosed Campbell's diagram to appellant and excluded it from evidence. However, the judge ruled that Campbell could testify about his findings during his investigation.

Campbell testified that on February 14, 1995 he located at the scene of the shootings a bullet hole on the outside of a trailer and two bullets inside the trailer. Campbell said, "It appeared that [one of] the bullet[s] had passed from the outside of the trailer to the inside wall into . . . [a] bedroom."

Appellant contends that the trial judge should have excluded Campbell's testimony because the Commonwealth's failure to disclose the diagram violated the terms of discovery ordered by the trial judge. "Rule 3A:11 provides for limited pretrial discovery by a defendant in a felony case." Ramirez v. Commonwealth, 20 Va. App. 292, 295, 456 S.E.2d 531, 532 (1995). In pertinent part, Rule 3A:11(b)(1) provides that
> [u]pon written motion of an accused a court shall order the Commonwealth's attorney to permit the accused to inspect and copy or

photograph any relevant . . . written reports of autopsies, ballistic tests, fingerprint analyses, handwriting analyses, blood, urine and breath tests, other scientific reports, and written reports of a physical or mental examination of the accused or the alleged victim made in connection with the particular case, or copies thereof, that are known by the Commonwealth's attorney to be within the possession, custody or control of the Commonwealth.

"While . . . Rule [3A:11] permits a defendant to discover written 'scientific reports,' by its very terms the Rule 'does not authorize the discovery . . . of reports, memoranda or other internal Commonwealth documents made by agents in connection with the investigation or prosecution of the case . . . .'" Spencer v. Commonwealth, 238 Va. 295, 303, 384 S.E.2d 785, 791 (1989).

Campbell's diagram was not a report or test included within the scope of Rule 3A:11 or appellant's discovery motion. To the contrary, the diagram was prepared by Campbell as he investigated the scene and was intended for use as a demonstrative exhibit only. It was not a written report of a ballistic test. Accordingly, the Commonwealth had no duty to disclose the diagram to appellant before trial. Because no discovery violation occurred, the trial judge did not err in refusing to exclude Campbell's testimony.

II.

Campbell first examined the Jetta at Franklin's Garage on February 14, 1995. Inside the car, Campbell found a shell casing on the passenger seat "to the far right, almost up against . . .

the right-front passenger door."  Campbell did not collect the casing at that time, but secured the doors of the vehicle with evidence tape.  He returned on February 16, 1995, further examined the vehicle, and seized the shell casing and other evidence.  The shell casing was from a .357 Magnum.  The bullets recovered from Whitlock's body and the crime scene could have been fired from a .357 Magnum.

Appellant asserts that the trial judge should have excluded the shell casing from evidence because the Commonwealth failed to establish the chain of custody.  "Establishing a chain of custody of exhibits is necessary to afford reasonable assurance that the exhibits at trial are the same and in the same condition as they were when first obtained."  Horsley v. Commonwealth, 2 Va. App. 335, 338, 343 S.E.2d 389, 390 (1986) (citing Robinson v. Commonwealth, 212 Va. 136, 138, 183 S.E.2d 179, 180 (1971)).  The Commonwealth, however, "is not required to exclude every conceivable possibility of substitution, alteration, or tampering."  Pope v. Commonwealth, 234 Va. 114, 121, 360 S.E.2d 352, 357 (1987).  "Where there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight to be given the evidence."  Reedy v. Commonwealth, 9 Va. App. 386, 391, 388 S.E.2d 650, 652 (1990) (where clothing appellant wore when his home burned travelled to the hospital either on defendant's person or near him on the

stretcher and later was recovered from the floor of the emergency room by hospital personnel, evidence sufficiently established chain of custody of the clothing).

Police officers impounded the Jetta, thereby seizing all evidence contained inside, on the night of the shootings. Using flashlights at night, the officers looked inside the vehicle, but did not spot the shell casing, which Campbell first noticed the following night. The casing was located to the far right of the car near the passenger side door, and might not have been easily visible with only a flashlight from the outside of the vehicle. Following his discovery, Campbell secured the vehicle with evidence tape. When Campbell returned on February 16, he removed the shell casing for analysis.

These circumstances provided reasonable assurance that the shell casing was contained in the vehicle when the police impounded the vehicle and that it remained there until Campbell removed it. With the exception of Campbell's contacts with the vehicle, the record contains no evidence that the Jetta was disturbed in any manner after the police impounded it. The theory that the shell casing was placed inside the vehicle after the impoundment amounted to nothing more than mere speculation of tampering with the evidence. Such speculation did not require the exclusion of the shell casing, but affected the weight the jury could assign to it. See id. In fact, in closing argument to the jury, appellant asserted the theory that the shell casing

had been planted in the car.

The Commonwealth laid a sufficient foundation for the introduction of the shell casing. Therefore, the trial judge did not abuse his discretion by admitting the casing into evidence and letting what doubt there may have been about its origin go to its weight.

### III.

Testifying as a witness for the Commonwealth, Brooks admitted that a felony charge was pending against him. He also said he had talked to Holt about appellant's case. Brooks stated that Holt always would find out when Brooks was arrested on other charges.

In his own behalf, appellant called Odesster Byrd, Brooks' former girlfriend, as a witness. Byrd testified that Brooks originally denied seeing appellant at the scene of the shootings. She also said that she had told Holt she knew Brooks had been in contact with him. Appellant asked the trial judge to permit him to question Byrd further about her knowledge of Brooks' bias in favor of the prosecution and about whether the Commonwealth was protecting Brooks from prosecution upon unrelated charges. The trial judge ruled that to explore this line of questioning, appellant must first call Holt and question him about any deals he may have made with Brooks. Then, the judge stated, appellant could recall Byrd to respond to Holt's testimony.

Appellant called Holt as a witness. Holt said he had not

made any representations to Brooks about obtaining favorable treatment in an unrelated criminal matter in exchange for information against appellant. However, Holt indicated that, because he told Brooks that any information Brooks provided would be brought to the attention of the Commonwealth's Attorney and perhaps the trial judge in an unrelated case, Brooks may have believed that he would receive consideration for his cooperation with the prosecution. Brooks had served as a paid police informant in relation to other criminal investigations. In fact, Holt had once discussed Brooks and his unrelated criminal charges with the Commonwealth's Attorney. Holt had advised a magistrate that it would not be a good idea for Brooks to be jailed in Halifax County with appellant.

Karen Harris, another former girlfriend of Brooks, testified that Brooks had said Holt would pay his telephone bill and give him assistance on charges in Charlotte County.

The Commonwealth later called Holt as a rebuttal witness. During direct examination the prosecutor asked Holt no questions concerning Byrd or Brooks. On cross-examination, appellant attempted to question Holt about what Byrd had told him about Brooks. The trial judge sustained the prosecutor's objection that the question was beyond the scope of direct examination.

Appellant then asked to reopen the evidence to question Holt, using notes Holt had located since testifying as a defense witness, about Holt's conversation with Byrd. Holt's notes

indicated Byrd had told Holt that Brooks had said he had made a deal with the prosecutor concerning a criminal charge Byrd had brought against Brooks. After asserting that the notes were exculpatory, defense counsel stated,

> I'm asking the Court just to give me a chance to reopen it for that one question to Officer Holt, given the fact that if [the prosecutor] had gone through Mr. Holt's file yesterday or the day before, he would have seen this, he would have realized what it is, and he would have given to me, and we could have done it through the evidence generally.

The trial judge refused, stating that appellant was limited to questioning Holt about matters brought up on direct examination. Appellant questioned Holt no further.

Appellant argues on appeal that the Commonwealth's failure to disclose Holt's notes entitled him to reopen his case and further question Holt and Byrd. Appellant, however, did not ask the trial judge to permit him to recall Byrd after Holt located his notes. The Court of Appeals will not consider an argument on appeal which was not presented to the trial court. See Jacques v. Commonwealth, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991) (citing Rule 5A:18). Accordingly, Rule 5A:18 bars our consideration of this question. The record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

"Whether to reopen a case lies within the sound discretion of the trial judge." Minor v. Commonwealth, 16 Va. App. 803, 805, 433 S.E.2d 39, 40 (1993). The refusal to permit a party,

after resting his case, to introduce further evidence will not be reversed on appeal absent an abuse of that discretion.  See Chrisman v. Commonwealth, 3 Va. App. 371, 375-76, 349 S.E.2d 899, 902 (1986).

In Williams v. Commonwealth, 4 Va. App. 53, 354 S.E.2d 79 (1987), the trial judge refused to permit the defendant to reopen the evidence and recall Mary Breeden, who allegedly overheard a conversation during the trial between Stephen Frazier, who was one of the Commonwealth's witnesses, and a police officer. Breeden supposedly heard Frazier and the officer discussing an agreement regarding Frazier's testimony against the defendant. Frazier earlier had testified that charges were pending against him, but there had been no evidence of a plea agreement.  The prosecutor denied that any deal existed.  According to defense counsel, Frazier had made statements indicating his belief that he would receive no incarceration upon the pending charges. Furthermore, Frazier's trial date had been postponed until after the defendant's trial.  See id. at 76, 354 S.E.2d at 92.  In upholding the trial judge's refusal of the defendant's request to recall Breeden, we stated:

> We cannot say as a matter of law that the trial court abused its discretion in refusing to allow further testimony from Breeden . . . .  Aside from the speculations of counsel regarding an undisclosed plea agreement, the only proffer of evidence was the assertion that Breeden could testify as to her belief that such an agreement existed. . . .  [T]he prosecutor specifically represented to the court that no plea agreement existed with Frazier.  Further, the

-11-

> jury was aware that Frazier was facing
> charges and that these charges were still
> pending. Breeden's belief in the existence
> of a plea agreement would not have added
> anything relevant to the jury's knowledge.

Id. at 77, 354 S.E.2d at 92-93.

Similarly here, even assuming that the Commonwealth should have revealed Holt's notes to the defense, nothing relevant to the jury's knowledge would have been added by permitting appellant to recall Holt. Byrd's statement to Holt had the tendency to prove that Brooks harbored a belief he had an agreement with the prosecutor. However, the jury already knew that a felony charge was pending against Brooks and that he had received preferential treatment, favors, and money from the police. Holt admitted that Brooks may have believed he had a deal with the Commonwealth regarding the pending charge. Just as in Williams, there was no evidence that an agreement actually existed between Brooks and the prosecution.

Furthermore, Byrd testified as appellant's own witness, and the trial judge had granted appellant permission to recall her after Holt during appellant's own case. Although appellant did not have Holt's notes at that time, Holt had indicated that Brooks had received assistance from the Commonwealth and might believe he had an agreement with the Commonwealth. Appellant never availed himself of the opportunity to recall Byrd during his own case to question her further about Brooks' purported contacts or a possible agreement with the prosecutor or the

-12-

police.

In addition, as the prosecutor argued at trial, the evidence appellant sought to elicit from Holt -- Byrd's statements to Holt about what Brooks had told her -- was clearly hearsay.  See Hamm v. Commonwealth, 16 Va. App. 150, 155, 428 S.E.2d 517, 521 (1993).  Neither at trial nor in this Court did appellant assert any exception to the hearsay rule which would permit the introduction of Holt's testimony.  "The party seeking to rely upon an exception to the hearsay rule has the burden of establishing admissibility."  Neal v. Commonwealth, 15 Va. App. 416, 421, 425 S.E.2d 521, 524 (1992).  Appellant failed to sustain this burden.

We find no abuse of discretion in the trial judge's refusal to allow appellant to reopen the evidence and recall Holt. Therefore, for the foregoing reasons, we affirm appellant's convictions.

Affirmed.

Benton, J., concurring and dissenting.

                                    I.

One of the Commonwealth's witnesses was a state police officer who was "an evidence technician." He testified that he examined the "[crime] scene to see if [there was] any evidence that may be of value that need[ed] to be collected." The officer collected bullets from inside the trailer and shell casings from an automobile. After the officer collected those items, he prepared a diagram of "measurements, . . . making from his own experience[] estimates as to trajectory or . . . how these things really line up." He prepared the document to use as "evidence of a trajectory."

On motion of the defendant to exclude the document and testimony concerning it, the trial judge stated that "it was understood by both attorneys that the Court had ordered discovery consistent with the motions filed by counsel for the defendant." Finding that the diagram was not disclosed to the defendant in discovery, the trial judge ruled that the exhibit could not be entered in evidence.

I disagree with the majority that the diagram indicating bullet trajectories was not a scientific report as contemplated by Rule 3A:11(b)(1). The document as described in the record supports the trial judge's ruling that it was. Nonetheless, I agree that the trial judge did not err in excluding the document and allowing the officer to testify concerning the evidence he

-14-

discovered.

Code § 19.2-265.4(B) states in pertinent part that if "the attorney for the Commonwealth has failed to comply with . . . [discovery], the court may order the Commonwealth to permit the discovery or inspection, grant a continuance, or prohibit the Commonwealth from introducing evidence not disclosed, or the court may enter such other order as it deems just under the circumstances."  This Court has ruled that "[t]he relief to be granted following the late disclosure of evidence is within the trial [judge's] discretion."  Knight v. Commonwealth, 18 Va. App. 207, 212, 443 S.E.2d 165, 168 (1994).

Although the trial judge did not bar the officer from testifying concerning his investigation, none of the officer's testimony concerned trajectories or the measurements as detailed on the diagram.  Accordingly, I would hold that the record established that the trial judge did not abuse his discretion in applying the sanction of Code § 19.2-265.4.

## II.

On February 13, 1995 the police "towed and impounded" for evidence the vehicle that was suspected of being used in the shooting.  No evidence proved that the police secured the vehicle when it was impounded or that the unlocked vehicle was not entered before it was secured the following night.

"[T]o establish a chain of custody of exhibits . . . the evidence [must] afford reasonable assurance that the exhibits at

trial are the same and in the same condition as they were when first obtained." Smith v. Commonwealth, 219 Va. 554, 559, 248 S.E.2d 805, 808 (1978). Because the police impounded the vehicle on February 13, 1995, the chain of custody for the vehicle and its contents began on that date.

The Commonwealth's evidence failed to properly account for the evidence for the first twenty-four hours the vehicle was in the custody of the police. The evidence proved that several police officers looked in the vehicle on February 13 before it was impounded. They saw no shell casings and failed to secure the unlocked vehicle. The Commonwealth's evidence establishing the chain of custody of the bullet casing found in the vehicle begins, however, on the night after the police obtained custody of the vehicle.

Officer Campbell testified that almost twenty-four hours after the vehicle and its contents were impounded, he went to the private garage where the police sent the vehicle. He went to the garage "because [he] had information that [the] vehicle needed to be examined." He testified that he "looked into the vehicle . . . [and] saw . . . a shell casing." The shell casing was "sitting in the passenger seat to the far right, almost up against what would be referred to as the right-front passenger door." The officer further testified that because he was "not going to examine [the] item at that time, [he placed evidence tape] . . . on the doors of the vehicle with [his] initials on it

to . . . protect the integrity of that vehicle."  Although the officer went to the vehicle because the vehicle "needed to be examined," he gave no explanation for deferring his examination.

The evidence proved that for twenty-four hours after the police impounded the vehicle, the vehicle was unsecured.  Consequently, a "'vital link in the chain of possession is not accounted for,'" i.e., from the impoundment until Officer Campbell's discovery twenty-four hours later.  Robinson v. Commonwealth, 212 Va. 136, 138, 183 S.E.2d 179, 180 (1971) (citation omitted).  For these reasons, I would reverse the convictions and remand for a new trial.