COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Huff, Judges Petty and Alston
Argued at Chesapeake, Virginia


SANTINO WOLFE

                                                    MEMORANDUM OPINION* BY
v.         Record No. 1873-14-1                     JUDGE ROSSIE D. ALSTON, JR.
                                                         FEBRUARY 16, 2016

COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                          Jerrauld C. Jones, Judge

             Lenita J. Ellis for appellant.

             Aaron J. Campbell, Assistant Attorney General (Mark R. Herring,
             Attorney General, on brief), for appellee.


       Santino Wolfe (appellant) appeals his convictions of possession of heroin with intent to

distribute, third offense, in violation of Code § 18.2-248, possession of a firearm while

committing possession of a Schedule I or II controlled substance with intent to distribute in

violation of Code § 18.2-308.4, and possession of a firearm by a non-violent felon in violation of

Code § 18.2-308.2.  Specifically, appellant argues that the trial court erred by admitting

certificates of analysis of heroin and cocaine into evidence due to an alleged gap in the chain of

custody of the drugs, that the trial court erred by refusing to grant appellant's motion to strike or

to set aside the verdicts because the evidence was insufficient to convict him, and that the trial

court erred by denying appellant's motion to set aside the verdicts because the jury's verdicts

were inconsistent.  Finding no error, we affirm.

_____

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I.  Background

### A.  Appellant's Arrest

The evidence indicated that on October 7, 2012, around 3:00 a.m., Officer Adam Pascoe of the Norfolk Police Department was on patrol in Norfolk near Booker T. Washington High School when he stopped a vehicle for having a broken tail light.  Appellant was the front-seat passenger in the vehicle.  After obtaining the driver's license and registration, Pascoe returned to his vehicle to run the driver's information.  While Pascoe was still in his vehicle, Officer Koy and Officer Hanel arrived on the scene to provide assistance.  After ordering both men out of the vehicle when Koy smelled alcohol on the driver's breath, Koy ordered both men to sit on the curb and received permission from the driver to search the vehicle for weapons.  While searching the vehicle for weapons, Koy lifted up a white jacket appellant took off as he exited the vehicle and a gun fell out.  As Koy and Hanel proceeded to handcuff the driver and appellant, appellant broke free and ran.  Koy pursued appellant and ultimately subdued him after activating his taser three times.  Koy placed appellant under arrest, radioed for medics and a supervisor, and did not return to the initial traffic stop scene.

Pascoe remained with the vehicle and driver when other officers arrived on the scene to provide backup.  Officer Leatherman and Officer Ibarra arrived and searched the vehicle.  Ibarra found another firearm and two baggies of what he suspected to be cocaine, which he placed in an envelope and secured in the trunk of his vehicle.  Later that morning, all of the evidence recovered from the vehicle, including the firearms, some money, an identification card, and the drugs were returned by various officers to Investigator Heinzen, of the vice and narcotics department, at the Police Operations Center (POC).  Heinzen subsequently sent the firearms and drugs to the Virginia Department of Forensic Science for testing, and it was determined that the baggies contained cocaine and heroin.

A grand jury later indicted appellant on one count of possession of a firearm by a non-violent felon in violation of Code § 18.2-308.2, two counts of felony possession with intent to distribute (one heroin and one cocaine), third offense, in violation of Code § 18.2-248(C), and one count of felony possession of a firearm while committing possession of a Schedule I or II controlled substance with the intent to distribute in violation of Code § 18.2-308.4(C).

B. The Trial Evidence

At appellant's trial, Officer Koy testified that after he and Officer Hanel arrived on the scene and spoke with the driver and appellant, they suspected the driver of DUI. Koy obtained consent from the driver to "conduct a frisk of the vehicle, for weapons only" and when he picked up a white jacket appellant took off as he exited the car, "a black handgun fell out." Koy then signaled to Hanel to handcuff the driver and when Koy went to grab appellant's wrist to handcuff him, appellant "immediately started to run." After a chase, Koy arrested appellant and did not return to the vehicle or further search it or appellant's jacket.

Officer Ibarra testified that when he arrived on the scene, he proceeded to search the vehicle, where he recovered two guns and two bags of "white, rock-like substance and $25" in the pockets of appellant's white jacket. Ibarra secured the bags, put them in an envelope, and placed them in his vehicle. Ibarra stated that after he secured the drugs in his vehicle he "believe[d he] gave [them] to Officer Koy." Specifically, when asked to clarify what he did with the drug evidence after securing it in his vehicle, Ibarra stated "I apologize, this is usually my fault, I should have been more detailed in reference to better notes for myself. But I want to say that I gave [the drugs] to Officer Koy and then I went to the POC to do some notes for the vice and narcotics investigators." Ibarra did not know what happened to the drugs after that point.

Investigator Heinzen testified that she was contacted by Pascoe on October 7, 2012, and that she advised him to bring all evidence to the POC, where she would handle the rest of the

- 3 -

case. Heinzen received the following: Some money and two baggies of suspected cocaine and suspected heroin from Ibarra at 6:10 a.m.; a firearm from Pascoe; and a Virginia identification card, additional money, and two cell phones from Officer Reyna. Heinzen field-tested the suspected cocaine and heroin and then placed all of the items on vouchers and put them in her police locker until they could be taken by the property division. The items were then taken to the Department of Forensic Science to be tested by lab personnel. Heinzen filled out a form identifying the evidence submitted to the lab.

David Koppenhaver of the Virginia Department of Forensic Science testified that he received the items Heinzen sent for testing. Specifically, he received four separate baggies of suspected drugs and a sample of appellant's DNA. Koppenhaver described the baggies as one baggie with an "off-white, solid material" and two or three baggies with a "tan solid material." Koppenhaver testified regarding the contents of the baggies, he identified Item 1 as cocaine and Item 2 as heroin.

Betty Jane Blankenship, also of the Virginia Department of Forensic Science, testified and was admitted as an expert in forensic biology and DNA analysis. Blankenship tested the gun and the baggies of drugs for touch DNA and compared the results to appellant's DNA. The trial court admitted the certificates of analysis into evidence. Blankenship labeled the baggie of cocaine as "Item 1," but did not get a DNA profile from Item 1. Blankenship labeled the baggie of heroin (which was one bigger baggie with two smaller baggies inside of it) as "Item 2" and the two baggies inside of it 2B and 2C. Item 2 contained a mixture of DNA and was inconclusive as to whether appellant was a contributor. Item 2C yielded a mixture of DNA from two people or more, and appellant could not be eliminated as a contributor. Blankenship testified that there were DNA types consistent with appellant's DNA type, but she could not say for sure that it was

- 4 -

his DNA on Item 2C. Item 2B also produced DNA mixture profiles, but Blankenship could not draw a conclusion because there was not enough DNA to conduct a reliable analysis.

Another Department of Forensic Science employee, Brian Covington, testified that he conducted a supplemental statistical analysis of Item 2C. His certificate of analysis was admitted into evidence. Covington concluded that Item 2C contained a mixture of two contributors and that the probability of selecting an unrelated individual that would be included as a possible contributor was 1 in 93,000 in the Caucasian population, 1 in 160,000 in the black population, and 1 in 100,000 in the Hispanic population. However, Covington could not say conclusively that appellant's DNA was on Item 2C.

During Heinzen's testimony, appellant objected to the admission of the lab reports for the drugs allegedly recovered in the case based on a gap in the chain of custody. Appellant argued that Ibarra testified that he collected the drugs from the jacket and then gave them to Koy; however Koy testified that he never received any drugs. Further, Ibarra testified that he collected two baggies of a white rock-like substance, yet Heinzen testified that she received four baggies, one of white rock-like substance, and three bags with a tan-colored substance in them. The Commonwealth argued that the inconsistent testimony went to the weight, and not the admissibility of the evidence. The trial court overruled appellant's objection and admitted the certificates of analysis.

The trial court also admitted two certified prior conviction records of appellant's from 2005 and 2008. After the Commonwealth rested, appellant moved to strike the evidence on a number of grounds, including objections to the chain of custody and sufficiency of the evidence. The trial court denied the motion to strike. At the conclusion of the trial, the jury convicted appellant of possession of heroin with intent to distribute, third offense, and possession of a firearm while possessing with intent to distribute a Schedule I or II controlled substance. The

jury acquitted appellant of possession of cocaine with intent to distribute, third offense. The jury later reconvened and found appellant guilty of possession of a firearm by a non-violent convicted felon.

After the trial, appellant filed a motion to set aside the jury verdicts, arguing that the verdicts were inconsistent insofar as they convicted appellant of possession of one drug but not the other. The trial court denied appellant's motion and later sentenced him to a total of twenty-seven years' incarceration for the drug-related convictions and three years' incarceration for the firearm conviction. This appeal followed.

## II. Analysis

A. The trial court did not err by admitting the certificates of analysis as any doubts as to the chain of custody went to the weight of the evidence, not its admissibility.

Appellant's three assignments of error all encompass challenges to the trial court's decision to admit the certificates of analysis for the drugs recovered because there was allegedly conflicting testimony regarding who Ibarra gave the drugs to after he recovered them from the vehicle in which appellant was a passenger. "We review a circuit court's decision to admit or exclude evidence under an abuse of discretion standard and, on appeal, will not disturb a circuit court's decision to admit evidence absent a finding of abuse of that discretion." Herndon v. Commonwealth, 280 Va. 138, 143, 694 S.E.2d 618, 620 (2010) (citing Avent v. Commonwealth, 279 Va. 175, 197, 688 S.E.2d 244, 256 (2010)).

Specifically, "[t]he determination on a chain of custody challenge lies within the trial court's broad discretion and will not be overturned on appeal absent an abuse of that discretion." Pope v. Commonwealth, 60 Va. App. 486, 511, 729 S.E.2d 751, 763 (2012) (citing Crews v. Commonwealth, 18 Va. App. 115, 118, 442 S.E.2d 407, 409 (1994)). "The basic rule for admitting demonstrative evidence is that the burden is upon the party offering the evidence to

show with reasonable certainty that there has been no alteration or substitution of it. But the burden is not absolute that 'all possibility of tampering' be eliminated." Robinson v. Commonwealth, 212 Va. 136, 138, 183 S.E.2d 179, 180 (1971) (quoting People v. Riser, 305 P.2d 1, 10 (1956)). "All that is required . . . to establish a chain of custody is that the Commonwealth's evidence afford reasonable assurance that the exhibits at trial are the same and in the same condition as they were when first obtained." Pope, 60 Va. App. at 511, 729 S.E.2d at 763 (quoting Pope v. Commonwealth, 234 Va. 114, 121, 360 S.E.2d 352, 357 (1987)). However, "[the] requirement of *reasonable certainty* is not met when some vital link in the chain of possession is not accounted for, because then it is as likely as not that the evidence analyzed was not the evidence originally received." Robinson, 212 Va. at 138, 183 S.E.2d at 180 (quoting Riser, 305 P.2d at 10). "In the event that a gap in the chain of custody is shown, 'gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility.'" Pope, 60 Va. App. at 511, 729 S.E.2d at 763 (quoting Aguilar v. Commonwealth, 280 Va. 322, 332-33, 699 S.E.2d 215, 220 (2010)).

The parties agree that the only issue relating to the chain of custody relates to the exchange of the contraband from Ibarra. Appellant argues that the Commonwealth did not meet its burden to prove an unbroken chain of custody of the drugs because of Ibarra's testimony that he gave the drugs to Koy and not directly to Heinzen. We disagree. The Commonwealth proved an unbroken chain of custody through the combined testimony of Koy, Ibarra, and Heinzen, as well as through the introduction of the certificate of analysis showing that appellant could not be excluded as providing a DNA match on one of the baggies of heroin, and Covington's testimony as to the statistical improbability that the DNA found belonged to someone other than appellant. While Ibarra's testimony was apparently inaccurate as to whom he gave the drugs, that is of no consequence in light of the other officers' testimony. The relatively simple inquiry this Court

must consider on appeal is whether the trial court erred in its determination that an alleged vital link in the chain of possession was accounted for. A failed recollection by one officer regarding whom he turned contraband over to does not *ipso facto* present that missing vital link to the chain of custody. Koy testified that he never received the drugs, and Heinzen testified that she received the drugs directly from Ibarra. Therefore, the unbroken chain of custody remained intact based on the collective testimony of the officers.

Further, it was not necessary for Ibarra to testify as to exactly what he did with the drugs while they were in his possession and the trial court was entitled to infer that he properly stored them in an envelope in the trunk of his car until delivering them to Heinzen, given Heinzen's testimony that she received them from Ibarra later that morning. See Gilmore v. Landsidle, 252 Va. 388, 396, 478 S.E.2d 307, 312 (1996) (holding that "[i]n the absence of clear evidence to the contrary, [an appellate court] must presume that a public officer has properly discharged his official duties"). Indeed in Pope, this Court determined that a trial court did not err "in concluding that [the police officer's] failure to enumerate the [evidence recovered] in his report or state how he kept [it] overnight did not constitute a missing 'vital link' in the chain of custody but rather went to the weight of the evidence." Pope, 60 Va. App. at 512, 729 S.E.2d at 763.

Additionally, DNA likely belonging to appellant was found on one of the baggies of heroin. It is noteworthy that all of the evidence recovered from the scene included four separate baggies that were put in a single envelope by Ibarra. This further corroborates the fact that the drugs tested by Blankenship were in fact the same drugs recovered from the vehicle in which appellant was a passenger on the day of his arrest. Ultimately, "[t]he purpose of the chain of custody rule is to establish that the evidence obtained by the police was the same evidence tested." Hargrove v. Commonwealth, 53 Va. App. 545, 553, 673 S.E.2d 896, 900 (2009) (quoting Brown v. Commonwealth, 21 Va. App. 552, 555, 466 S.E.2d 116, 117 (1996)). In this

case, Covington's testimony as to the likelihood of appellant's DNA on the baggie of heroin combined with Heinzen's and Koy's testimony provided the necessary assurance that the certificates of analysis admitted at trial reflected the results of testing the same drug-filled baggies found in appellant's jacket pocket on the date of his arrest.

We agree with the trial court that any question as to the chain of custody in this case went to the weight of the evidence and not its admissibility. Though this case by no means sets the standard for how law enforcement should collect and preserve evidence, nevertheless we find no abuse of discretion by the trial court and therefore affirm its decision to admit the certificates of analysis.

> B. The trial court did not err in refusing to set aside the verdicts for insufficient evidence and did not err by finding the Commonwealth met its burden of excluding any reasonable hypothesis of innocence.

"When the sufficiency of the evidence is challenged on appeal, we review the evidence in the 'light most favorable' to the Commonwealth, as the party prevailing at trial." Kelley v. Commonwealth, 289 Va. 463, 467, 771 S.E.2d 672, 674 (2015) (quoting Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003)). "We will not set aside the trial court's judgment unless it is 'plainly wrong or without evidence to support it.'" Id. at 468, 771 S.E.2d at 674 (quoting Code § 8.01-680; Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005)). "When the Commonwealth relies upon circumstantial evidence, the circumstances proved must be consistent with guilt and inconsistent with innocence. . . . The evidence as a whole must exclude every reasonable theory of innocence." Hudson, 265 Va. at 513, 578 S.E.2d at 785. "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Id. (citing Cox v. Commonwealth, 140 Va. 513, 517, 125 S.E. 139, 141 (1924)).

Under his second assignment of error, appellant restates his arguments from a sufficiency of the evidence standpoint concerning the alleged gap in the chain of custody of the drugs. His argument thus focuses on the weight the fact finder gave to the evidence recovered from appellant. For the reasons previously discussed, we disagree with appellant regarding the chain of custody of the drugs and find that the trial court did not err in denying appellant's motion to strike the evidence or his motion to set aside the verdicts because any issue with the chain of custody or witness testimony went to the weight of the evidence and not its admissibility. Further, the jury was entitled to credit Heinzen's and Koy's testimony and determine that Ibarra properly stored the drugs in the trunk of his vehicle before turning them over directly to Heinzen and not Koy. The Commonwealth was not obligated to disprove every possible theory of innocence, and we do not find that the trial court's judgment or the jury's verdicts were plainly wrong or without evidence to support them.[1]

C. The jury's verdicts were not inconsistent, and the trial court did not err in refusing to set them aside.

"[T]he judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680. Though "[u]nder Virginia law, it is permissible for juries to reach inconsistent

---

[1] Under his second assignment of error, appellant also argued that the Commonwealth failed to prove that appellant possessed the drugs – constructively or otherwise – because it did not prove that he knew the character and nature of the drugs. He also argues that the Commonwealth failed to prove a nexus between the firearm and the drugs. Not only were these issues not articulated in appellant's assignments of error as required by Rule 5A:12(c), but he did not make these arguments before the trial court in his motion to strike the evidence. Rule 5A:18 provides that "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court . . . to attain the ends of justice." Appellant first raised these issues in his supplemental motion to set aside the verdict. As the objection on those grounds was untimely after the trial court considered and ruled on appellant's motion to strike the evidence and after the jury found appellant guilty, we find that appellant failed to preserve these specific arguments for appeal and that consideration of them is barred by Rule 5A:18.

verdicts[,]" <u>Ludwig v. Commonwealth</u>, 52 Va. App. 1, 12, 660 S.E.2d 679, 684 (2008) (citing <u>Gaines v. Commonwealth</u>, 39 Va. App. 562, 570, 574 S.E.2d 775, 779 (2003) (*en banc*)), we disagree with appellant that the jury's verdicts in this case were in fact inconsistent.

The jury found appellant guilty of possession of heroin with intent to distribute, third offense, and not guilty of possession of cocaine with intent to distribute, third offense. Appellant argues that, because both drugs were found in the same jacket, he either should have been found guilty of possession of both or neither. Appellant again reiterates his objections to the chain of custody and alleged inconsistent testimony of the officers. However, appellant ignores the fact that the DNA evidence showed that the baggie of cocaine did not yield a DNA profile sufficient for testing. Conversely, according to Blankenship's testimony, one of the baggies of heroin inside the larger bag (Item 2C) yielded a mixture of DNA and appellant could not be eliminated as a contributor. Further, Covington testified that according to his statistical analysis of Item 2C, the probability of selecting an unrelated individual that would be included as a possible contributor was 1 in 93,000 in the Caucasian population, 1 in 160,000 in the Black population, and 1 in 100,000 in the Hispanic population. Though Covington could not conclusively say that appellant's DNA was on Item 2C, the jury was entitled to conclude from the scientific and other evidence provided that appellant possessed the heroin with intent to distribute, but that there was a reasonable doubt as to his possession of the cocaine due to the lack of any DNA evidence.

For the foregoing reasons, we affirm the trial court's decision to admit the certificates of analysis into evidence and affirm the trial court's denials of appellant's motion to strike the evidence and motion to set aside the verdicts.

<u>Affirmed</u>.